2002-NMSC-014

46 P.3d 94

CITY OF ALBUQUERQUE, ex rel. Albuquerque Police Department, Petitioner–Appellant,

v.

ONE (1) 1984 WHITE CHEVY UT., VIN 1G8CS18BXE8176575, NEW MEXICO LICENSE NO. 335–KRH, One (1) 1992 Red Dodge Pick Up, VIN 1B7KE26Z2NS646602, New Mexico License No. 389–LBB, One (1) White 1974 Ford Van, VIN E37BHT24734, New Mexico License No. 855–BPZ, and One (1) 1982 White Datsun 720, VIN JN6MD06S6CW119958, New Mexico License No. 392–LNS, Defendants,

and

Rumaldo Lujan, Lucy Kowalchuk, Frank Bolagh, and Paula Viera, Claimants–Appellees.

No. 27,067.

Supreme Court of New Mexico.

April 24, 2002.

**188**

City of Albuquerque, Stanley D. Harada, Albuquerque, NM, for Appellant.

Smith Law Offices, Jack A. Smith, Albuquerque, NM, for Appellee Rumaldo Lujan.

Phyllis H. Subin, Chief Public Defender, Thomas DeMartino, Assistant Public Defender Albuquerque, NM, Robert E. Tangora, L.L.C., Robert E. Tangora, Santa Fe, NM, for Amicus Curiae New Mexico Criminal Defense Lawyers Association.

Thomas DeMartino, Albuquerque, NM, for Amicus Curiae New Mexico Public Defender Department.

*OPINION*

FRANCHINI, Justice.

{1} This case arises under an ordinance (Ordinance) enacted by the City of Albuquerque to obtain civil forfeiture of motor vehicles from those motorists who drive after having had their licenses revoked for convictions for driving while intoxicated (DWI) or who have been arrested for a third or subsequent DWI offense after having two previous convictions for DWI. *See* Albuquerque, N.M., Code of Ordinances ch. 7, art. 6, §§ 7–6–1 to –6 (1992, as amended through 1997, prior to 1999 and 2000 amendments). The City appeals the dismissals in district court of its forfeiture actions brought under the Ordinance; the district court judges, relying upon *State v. Nunez*, 2000–NMSC–013, 129 N.M. 63, 2 P.3d 264, had dismissed the complaints on double jeopardy grounds. The City filed appeals of the dismissals with the Court of Appeals, which consolidated the cases and then certified the matter to this Court under NMSA 1978, § 34–5–14(C)(1), (2) (1972) and Rule 12–606 NMRA 2002.

{2} The question certified to us, and the only issue on appeal, is "whether New Mexico's constitutional and statutory double jeopardy provisions preclude the City's pursuit of DWI-related civil forfeiture actions after the completion of criminal proceedings." Because we determine that the purpose of the Ordinance is remedial, we hold that *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 904 P.2d 1044 (1995), is the controlling law in this matter. We conclude that the Ordinance does not violate the Double Jeopardy Clauses of the United States and New Mexico Constitutions or the statutory double jeopardy provision. *See* U.S. Const. amend. V; N.M. Const. art. II, § 15; NMSA 1978, § 30–1–10 (1963). We therefore reverse and remand for the cases to be reinstated on their respective district court dockets.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} The driver's licenses of the Claimants were revoked because of previous DWI convictions; all the Claimants have multiple previous DWI arrests and convictions. The Claimants had been stopped by the police for traffic violations, and, in the course of their investigations, the officers learned of the revoked licenses. Each of the Claimants was arrested for driving on a revoked license under either NMSA 1978, § 66–8–122(G)

(1985) or NMSA 1978, § 66–5–39(A) (1993), and also charged with other traffic offenses.

{4} After the Claimants were convicted in the Bernalillo County Metropolitan Court of criminal charges, the City attorney filed civil forfeiture actions in district court under the Ordinance. The Claimants then moved to dismiss the separate forfeiture actions. In every case, the district court dismissed the City's complaint based on the determination that forfeiture of the vehicles under the City Ordinance would violate double jeopardy by punishing twice for the same offense.

## II. DISCUSSION.

### A. Standard of Review.

 {5} When there are no disputed material facts, an appellate court reviews all issues on appeal under a de novo standard of review. *State v. Reyes–Arreola,* 1999–NMCA–086, ¶ 5, 127 N.M. 528, 984 P.2d 775. "A strong presumption of constitutionality surrounds a statute." *Ortiz v. Taxation & Revenue Dep't,* 1998–NMCA–027, ¶ 5, 124 N.M. 677, 954 P.2d 109. A party challenging the constitutionality of a statute has the burden of proving it is unconstitutional beyond a reasonable doubt. *City of Farmington v. Fawcett,* 114 N.M. 537, 540, 843 P.2d 839, 852 (Ct.App.1992). " 'In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the [L]egislature.' " *N.M. Dep't of Health v. Compton,* 2001–NMSC–032, ¶ 18, 131 N.M. 204, 34 P.3d 593(quoting *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988)).

{6} The purpose of the Ordinance, as described in the findings section, is to protect the health and safety of the citizens of Albuquerque by abating motor vehicle nuisances. *See* Albuquerque Ordinance, § 7–6–1. The City enacted the Ordinance in response to the substantial problems in the community caused by those who drive under the influence of liquor or drugs and thus create the potential for serious injury and loss of life to innocent citizens. *Id.* The City found that allowing access to motor vehicles to these types of drivers increased the likelihood that they will repeat the offense. *Id.* The motor vehicles used by those drivers were found to constitute a nuisance to the general public and to be dangerous to the health and safety of the general public. *Id.* Under the Ordinance, a motor vehicle that has been declared a nuisance is subject to forfeiture. *See* § 7–6–2. Once a judicial order for forfeiture has been entered, the motor vehicle is sold and the proceeds used to carry out the Ordinance. *See* § 7–6–5(E). Any proceeds that exceed the costs of administering the Ordinance must be used for DWI prevention and education. *Id.*

### B. Double Jeopardy.

 {7} The Claimants argued, and the district court agreed, that the forfeiture of their motor vehicles would constitute double jeopardy. The Double Jeopardy Clauses of the United States and New Mexico Constitutions protect a criminal defendant from both successive prosecution and multiple punishments based on successive criminal prosecutions. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Kennedy,* 120 N.M. at 625–26, 904 P.2d at 1050–51. "The Clause protects only against the imposition of multiple criminal punishments for the same offense and then only when such occurs in successive proceedings." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (citations and emphasis omitted). "[A] legislature 'may impose both a criminal and a civil sanction in respect to the same act or omission' without violating the Double Jeopardy Clause." *Kennedy,* 120 N.M. at 628, 904 P.2d at 1053 (quoting *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)). "[A] criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy only if the forfeiture constitutes 'punishment.' " *City of Pine Springs v. One 1992 Harley Davidson,* 555 N.W.2d 749, 750 (Minn.Ct.App.1996).

{8} Both the City and the Claimants[1] agree that the three-part test this Court articulated in *Kennedy* is the appropriate

---

1. For ease of reference, the opinion attributes to one party, the Claimants, all arguments made on their behalf whether the arguments were theirs or made by Amicus Curiae.

standard for analyzing their competing claims. In *Kennedy*, this Court was asked to resolve the question of "whether double jeopardy prohibits the State from subjecting an accused drunk driver to both an administrative driver's license revocation proceeding and a criminal prosecution." *Kennedy*, 120 N.M. at 623, 904 P.2d at 1048. We analyzed the question using the following standard:

> Multiple punishment analysis ... entails three factors: (1) whether the State subjected the defendant to separate proceedings; (2) whether the conduct precipitating the separate proceedings consisted of one offense or two offenses; and (3) whether the penalties in each of the proceedings may be considered "punishment" for the purposes of the Double Jeopardy Clause.

*Kennedy*, 120 N.M. at 626, 904 P.2d at 1051. We concluded that double jeopardy was not implicated because the administrative driver's license revocation was a remedial measure and thus did not constitute a punishment. *Id.* at 635, 904 P.2d at 1060.

{9} In this case, the City and the Claimants are also in agreement with regard to the first two factors of the test: (1) the actions in Metropolitan Court and in district court were separate proceedings, and (2) there was a single offense involved in the separate proceedings. But the parties disagree over the third factor of the analysis—whether forfeiture of the motor vehicles should be considered remedial or punitive. Further, although the Claimants agree that the test in *Kennedy* is the proper standard for the analysis of the issue raised in this case, they assert that *Nunez* should control the result. However, we are not persuaded by this contention and conclude that *Nunez* would not be applicable because it dealt particularly with the provisions of the Controlled Substances Act, NMSA 1978, §§ 30–31–1 to –41 (1972, as amended through 1997, prior to later amendments). *See Nunez*, 2000–NMSC–013, ¶ 16, 129 N.M. 63, 68, 2 P.3d 264 ("In our opinion today, we reject federal doctrine regarding the double-jeopardy implications of civil forfeiture as it is applied under the Controlled Substances Act."); *see also State v. Elliott*, 2001–NMCA–108, ¶ 28, 131 N.M. 390, 37 P.3d 107 (concluding that

*Nunez* did not apply to revocation of bail), *cert. granted on another ground*, 131 N.M. 382, 37 P.3d 99 (2001); *State v. Astorga*, 2000–NMCA–098, ¶ 7, 129 N.M. 736, 13 P.3d 468 (concluding that *Nunez* did not apply to the loss of good time credit in prison), *cert. denied*, 130 N.M. 17, 16 P.3d 442 (2000).

{10} On appeal, the City argues that the district courts erred when they concluded that forfeiture under the Ordinance violated the principle of double jeopardy against multiple punishments. Rather, the City maintains, forfeitures of motor vehicles under the Ordinance are remedial because the Ordinance's purpose is to protect public safety. The City relies on the plain language of the Ordinance itself and the fact that the motorists to whom the Ordinance applies are repeat offenders who have not been deterred by lesser sanctions. All the Claimants were driving without being licensed to do so because their licenses had previously been revoked for DWI offenses.

{11} To determine whether a sanction is remedial or punitive, a reviewing court begins by "evaluating the government's purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant." *Kennedy*, 120 N.M. at 631, 904 P.2d at 1056. Then the court must determine whether the sanction established by the legislation was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect. *Id.* at 631, 904 P.2d at 1056; *accord Hudson*, 522 U.S. at 99–100, 118 S.Ct. 488 (describing the test for determining whether a statutory scheme created a civil remedy or criminal penalty). Although a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose. (*Kennedy*, 120 N.M. at 631, 904 P.2d at 1056) ("[W]hether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment.") (quoted authority and quotation marks omitted).

{12} In *Kennedy*, this Court determined that suspending the driver's license of an individual who exceeded the statutory limits of a blood-alcohol test or refused to take the

test "serves the legitimate nonpunitive purpose of protecting the public from the dangers presented by drunk drivers and helps enforce regulatory compliance with the laws governing the licensed activity of driving." 120 N.M. at 632, 904 P.2d at 1057. Although we acknowledged that license revocation might have an incidental deterrent effect, this aspect of the sanction was not punitive. because the revocation "serves regulatory goals adopted in the public interest" which are intended to "protect the public from licensees who are unfit to participate in the regulated activity." *Id.* at 631, 904 P.2d at 1056.

{13} The City argues that its Ordinance conforms with the standard articulated in *Kennedy.* The legislative purpose was to provide the public with safe roads. The Ordinance is directed toward those members of the community who continue to drive after having had their licenses revoked or suspended as a result of being convicted of DWI or those who have been arrested for a third or subsequent DWI offense. The forfeiture actions are designed to remove the means of driving from those drivers who the state has already determined are "unfit to participate" in the activity of driving; their licenses have been revoked, yet they continue to drive and expose the public to danger. As the City points outs, the vehicle constitutes an essential element of DWI and its related offenses. The vehicle is the instrumentality without which the crimes of DWI or driving on a revoked or suspended license could not be committed.

{14} The Claimants do not challenge that the purpose articulated by the Ordinance is remedial. They respond to the City's arguments by asserting that it is the substantive provisions that reveal the punitive nature of the Ordinance. They contend that it is punitive because it has a deterrent quality, there is no correlation to the harm, and it contains an "innocent owner" provision. We do not find these claims to be persuasive. As we stated in *Kennedy,* "the fact that the regulatory scheme has some incidental deterrent effect does not render the sanction punishment for the purposes of double jeopardy analysis." *Kennedy,* 120 N.M. at 633, 904

P.2d at 1058. "[D]eterence may be a valid objective of a regulatory statute." *Id.* (quoting *Butler v. Dep't of Pub. Safety & Corr.,* 609 So.2d 790, 797 (La.1992)); *see also Davis v. Municipality of Anchorage,* 945 P.2d 307, 310 (Alaska Ct.App.1997); *One 1992 Harley Davidson,* 555 N.W.2d at 751–52; *State v. Konrath,* 218 Wis.2d 290, 577 N.W.2d 601, 610 (1998). Moreover, if the Ordinance has the effect, as the Claimants contend, of deterring future DWI offenses or driving with revoked license offenses, this effect could be said to further the remedial purpose of protecting public safety.

{15} As we understand the Claimants' second argument, they contend that the Ordinance is punitive because it fails to correlate the value of the forfeited vehicles to the harm caused by DWI and its related offenses. In addressing this claim, we find persuasive the following holding of the Court of Appeals of Minnesota: "In light of the seriousness of the risks associated with multiple DWI-related occurrences, we conclude that forfeiture of [the driver's] truck is not grossly disproportional to the gravity of a repeat DWI violation." *Lukkason v.1993 Chevrolet Extended Cab Pickup,* 590 N.W.2d 803, 808–09 (Minn.Ct.App.1999). The Claimants' argument would have the Court disregard the remedial aspects of civil forfeitures: the forfeitures authorized by the Ordinance eliminate the means of committing the crime and prevent the vehicle's use in further offenses. Removing the offending vehicle from the road has a direct correlation to the harm of DWI or driving with a revoked or suspended license.

{16} As the City observes, the underlying criminal offense of driving with a revoked or suspended license could not have been committed without the vehicles. Forfeiture of the vehicles disposes of the instrumentality of the crimes; there is a clear nexus between the property and the crime (regardless of who committed the crime). "Removal of the 'instrumentality' of crimes ... has repeatedly been upheld as serving a remedial purpose." *City of New Hope v. 1986 Mazda 626,* 546 N.W.2d 300, 303 (Minn.Ct.App.1996) (relying upon *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 364, 104 S.Ct. 1099,

79 L.Ed.2d 361 (1984)). Moreover, the Ordinance affects only those drivers who have chosen to ignore the earlier sanctions of convictions or license revocations—only in those instances is the instrumentality of the crime forfeited as another means of removing these repeat offenders from the road. *Id.* at 304; *see also Hawes v. 1997 Jeep Wrangler*, 602 N.W.2d 874, 878 (Minn.Ct.App.1999) (holding that a vehicle forfeiture served the "remedial goal of enhancing public safety by removing from repeat intoxicated drivers the instrumentality used to commit their violations").

{17} The Ordinance protects against forfeiture when the owner or a secured party was not involved in or did not know of the illegal use of the vehicle. When an owner or co-owner of a vehicle or a secured party establishes a prima facie case of lack of knowledge of or consent to the illegal use of the vehicle, the burden of proving knowledge and consent shifts to the City. *See* § 7–6–6(A). The Claimants argue that the inclusion of this provision, designed to protect the ownership interests of the innocent, manifests an intent to punish those who are guilty. The inclusion of an innocent owner provision is typical of forfeiture measures. *See, e.g., Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 1234, 152 L.Ed.2d 258 (2002) ("It is entirely reasonable to think that the Government, when seeking to transfer private property to itself in a forfeiture proceeding, should be subject to an 'innocent owner defense' ...."). The innocent owner provision serves to focus the Ordinance on only those owners who know of or consent to the illegal use of their vehicles. The vehicles then become dangerous to the safety of the general public because the owner either uses it to commit crimes or permits others to do so. *See* Albuquerque Ordinance, § 7–6–1. We are not persuaded that it would be reasonable for us to attribute to the Ordinance the converse proposition advocated by the Claimant, namely that the innocent owner provision reveals the Ordinance to be a punitive measure within the meaning of the double jeopardy clause.

{18} In New Mexico, the elimination of driving while intoxicated and its related offenses is a matter of grave concern to society in general, and to our courts and Legislature in particular. With regard to this concern, we made the following observation in *Kennedy:*

> New Mexico has a serious problem with drunk drivers, with one of the highest rates in the nation of DWI-related fatalities. Our citizens are obviously concerned by this dangerous situation, and through their elected representatives have established a system providing punishment for drunk drivers along with remedial measures for the protection of the population.

*Kennedy*, 120 N.M. at 624, 904 P.2d at 1049. Additionally, as the City noted in its brief, New Mexico has the highest national percentage of fatal accidents involving drivers with "aberrant license statuses." The percentage in our state is 23.8 percent while the national average is 13.8 percent. We conclude that the clear intent and purpose of the City Ordinance is to establish a remedial measure to protect the public from those drivers who persist in driving after license revocation and multiple DWI offenses. We hold that the City Ordinance serves the remedial purpose of protecting the public and that the forfeiture of a motor vehicle used by a repeat offender is not punitive.

## III. CONCLUSION.

{19} We conclude that the City Ordinance serves the remedial, nonpunitive purpose of protecting public safety and does not violate the United States and New Mexico Double Jeopardy Clauses or the statutory double jeopardy provisions. The district court erred in dismissing the City's forfeiture complaints; the dismissals should be vacated and the cases reinstated on the respective dockets.

{20} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.