2004-NMCA-039

87 P.3d 1095

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Lenora TIJERINO and Gregory Gurule, Defendants–Appellees.**

**No. 23422.**

Court of Appeals of New Mexico.

Feb. 6, 2004.

Certiorari Denied. No. 28,522, March 22, 2004.

**314**

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellant.

Nancy L. Simmons, Law Offices of Nancy L. Simmons, P.C., Albuquerque, for Appellee Tijerino.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Appellee Gurule.

Robert M. White, City Attorney, Donald F. Harris, Assistant City Attorney, City of Albuquerque, Albuquerque, for Amicus Curiae City of Albuquerque.

## OPINION

WECHSLER, Chief Judge.

{1}   The State of New Mexico appeals the district court's grant of co-defendants Lenora Tijerino and Greg Gurule's motion to dismiss. The State argues that the district court erred in finding that jeopardy had attached in the City of Albuquerque's previous civil forfeiture proceeding against Defendants' Ford Expedition, when a stipulated order of dismissal was filed returning the vehicle to Ford Motor Credit upon the condition that it not release the vehicle to Defendants. The State also alternatively argues that even if jeopardy attached as a result of the civil forfeiture proceeding, the district court erred in granting the motion in its entirety because the dismissal included indictments that were separate from the forfeiture proceeding. The City has filed an amicus curiae brief in support of the State's appeal. We affirm.

*Factual and Procedural History*

{2}   On April 28, 2001, Defendants were arrested. On October 1, 2001, separate indictments were filed against Defendants. Both Defendants were charged with two counts of trafficking by distributing cocaine contrary to NMSA 1978, § 30–31–20(A)(2) (1990) and two counts of conspiracy to commit trafficking by distributing cocaine contrary to Section 30–31–20(A)(2) and NMSA 1978, § 30–28–2 (1979). In addition, Gurule was charged with possession of one ounce or less of marijuana, contrary to NMSA 1978, § 30–31–23(B)(1) (1990), and Tijerino was charged with one count of prostitution, contrary to NMSA 1978, § 30–9–2 (1989).

{3}   On June 4, 2001, the City of Albuquerque filed a forfeiture complaint under the Controlled Substances Act, NMSA 1978, §§ 30–31–1 to –40 (1972, as amended through 1997). The City seized the vehicle belonging

to Defendants, alleging that the vehicle was used, or intended for use of, or to facilitate transfer of, illegal narcotics. The City also determined that Ford would claim a security interest in the vehicle.

{4} On August 16, 2001, the City and Ford entered into a bilateral stipulation and agreement in which the City agreed to release the vehicle to Ford as an innocent lienholder. Paragraph 6 of the agreement, in pertinent part, provided as follows:

> THE CITY ... agrees to dismiss [the] Forfeiture Complaint. In exchange for Dismissal of this Complaint against Ford ... and the release of the subject motor vehicle to Ford ..., [Ford agrees] that it will not release the ... vehicle to [Defendants]. Ford ... also agrees to pay the towing and all storage fees incurred in the seizure of the vehicle.

{5} The City notified Defendants' counsel of its intent to release the vehicle to Ford and gave Defendants one week to object. Defendants' counsel informed the City that Defendants concurred with the proposed order and motion. As a result, the district court entered a stipulated order of dismissal on August 21, 2001 incorporating the terms of the stipulation and agreement, and the City released the vehicle to Ford. Ford subsequently sold the vehicle and obtained a deficiency judgment in the amount of $5944.27 against Defendants.

{6} The State filed criminal charges on October 1, 2001. Defendants filed a motion to dismiss the case on double jeopardy grounds based on *State v. Nunez*, 2000–NMSC–013, 129 N.M. 63, 2 P.3d 264. The district court granted Defendants' motion and dismissed both complaints in their entirety, dismissing Gurule's indictment with prejudice. The district court denied the State's motion to reconsider the dismissal of the indictments.

*Statement of the Issue Based on State v. Nunez*

{7} Under *Nunez*, if a civil forfeiture action and a criminal action, both arising under the Controlled Substances Act, are brought as separate proceedings, jeopardy may attach when the first proceeding is con-

cluded, prohibiting the government from proceeding with the second proceeding on double jeopardy grounds. *Id.* ¶¶ 31, 104, 2 P.3d 264. The central issue in this case is whether jeopardy can attach in a civil forfeiture proceeding arising under the Controlled Substances Act when the final disposition of the case results in a stipulated dismissal and a loss of a property interest without a judgment of forfeiture. The issue of whether there has been a double jeopardy violation is a constitutional issue we review de novo. *See generally Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991); *see also State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (applying a de novo standard of review to constitutional claims).

{8} Our Supreme Court in *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 626, 904 P.2d 1044, 1051 (1995), articulated the test for multiple punishment analysis as follows:

> Multiple punishment analysis ... entails three factors: (1) whether the State subjected the defendant to separate proceedings; (2) whether the conduct precipitating the separate proceedings consisted of one offense or two offenses; and (3) whether the penalties in each of the proceedings may be considered "punishment" for the purposes of the Double Jeopardy Clause.

If all three prongs of the test are met, the New Mexico double jeopardy clause bars successive prosecution. *Id.* at 626–28, 904 P.2d at 1051–53. The State asks this Court to interpret the innocent lienholder provision contained in the Controlled Substances Act in order to determine whether it is punitive for double jeopardy purposes. However, our Supreme Court in *Nunez* has already exhaustively performed the *Schwartz* three-pronged analysis in the context of a civil forfeiture proceeding under the Controlled Substances Act. *Nunez*, 2000–NMSC–013, ¶¶ 36–94, 129 N.M. 63, 2 P.3d 264. The Court decided that the Controlled Substances Act, as a whole, was punitive for purposes of double jeopardy analysis. *Id.* ¶ 94. As a result, we need not separately apply the *Schwartz* analysis to the innocent lienholder provision which is contained within the Act. We need only decide whether jeop-

ardy attached as a result of the City releasing the vehicle to Ford by virtue of the stipulated order of dismissal.

{9} The State argues that jeopardy had not attached in this case because *Nunez* specifically holds that "jeopardy attaches in a civil forfeiture proceeding at the time the court enters its final judgment, either at the conclusion of a trial or upon entering a default judgment." *Nunez*, 2000–NMSC–013, ¶ 29, 129 N.M. 63, 2 P.3d 264. The State essentially contends that the holding in *Nunez* is all inclusive. Therefore, in the State's view, the only two events that can trigger the attachment of jeopardy are final judgment or an entry of a default judgment in the forfeiture proceeding.

{10} *Nunez* is a case that consolidated the appeals of five defendants. *Id.* ¶ 1. Four of the defendants had property seized pursuant to the Controlled Substances Act and had default judgments entered against them in forfeiture proceedings. *Id.* ¶¶ 3, 9, and 11. The other defendant reached a compromise settlement and had a judgment entered regarding his seized property in which the Albuquerque Police Department retained $350 of cash seized with the vehicle and returned the vehicle to the defendant. *Id.* ¶ 7. Our Supreme Court held that jeopardy attached at the time the judgments were entered in all five cases. *Id.* ¶ 29. While our Supreme Court held that jeopardy attaches at final judgment or default judgment, it did not expressly hold that these were the only instances when jeopardy can attach. Rather, the Court stated as its reasoning for holding that jeopardy attached at the time of final judgment in civil forfeiture proceedings that "the final decree of forfeiture marks the moment when the ownership rights of the defendant are altered." *Id.* Therefore, the relevant question in this case is whether Defendants' property rights were altered by the City as a result of the seizure, the agreement, and the entry of the stipulated order of dismissal.

*Attachment of Jeopardy*

{11} The City seized Defendants' vehicle and entered into an agreement with Ford, specifically incorporated in the district court's order of dismissal, giving possession of the vehicle to Ford and prohibiting Ford's release of the vehicle to Defendants. Defendants never regained possession, and Ford subsequently sold the vehicle to a new owner. In a separate action, Ford sought and received a deficiency judgment against Defendants.

{12} The contract between Defendants and Ford provided that Defendants were in default if the vehicle was seized or Defendants failed to make payments. We do not agree with the State that the City was merely facilitating and enforcing this contract by returning the vehicle that had been seized to Ford. The City conditioned its dismissal of the forfeiture proceeding on the prohibition of the return of the vehicle to Defendants. The practical effect of this agreement and the accompanying dismissal was that Defendants' property interest in the vehicle was altered once Ford took possession. *See id.* ¶ 33 (stating that "[f]orfeiture is the complete divestiture of the ownership of property without compensation"). Although Defendants would have generally had the contractual right to pay Ford the balance due on the vehicle and regain possession, the agreement effectively removed this right. Indeed, Defendants had no practical incentive to exercise this right, knowing that the City would only, in turn, proceed with the forfeiture. As a consequence, even if Defendants had any continuing right to the vehicle after Ford took possession, it was a right without substance.

{13} We note additionally that Defendants had greater participation in this case than the defendants in *Nunez*, who did not appear and were subject to default judgments that resulted in the loss of their property. *See Nunez*, 2000–NMSC–013, ¶ 102, 129 N.M. 63, 2 P.3d 264. We believe that if jeopardy attaches as in *Nunez* when a defendant fails to appear and receives a default judgment, jeopardy can attach in this situation when a defendant does appear and participates in a proceeding that results in the loss of a property interest.

{14} The State relies on *Halmon v. Pico Drilling Co.*, 78 N.M. 474, 476, 432 P.2d 830, 832 (1967), for the proposition that a stipu-

lated dismissal leaves the situation as though the civil forfeiture proceeding had never been filed. However, *Halmon* was entirely a civil case that did not involve civil forfeiture and double jeopardy, or their underlying policies. *See id.* at 476, 432 P.2d at 832. In addition, this stipulated dismissal did not leave the parties as though the forfeiture proceeding had never been filed. Ford obtained possession of the vehicle under an agreement with the City not to release it to Defendants.

{15} The State also argues that jeopardy cannot attach to the stipulated order of dismissal without prejudice because a new lawsuit can be brought in the same proceeding. We do not agree. *Nunez* focuses on the moment in which there is an alteration of a defendant's property interest for purposes of determining when jeopardy attached. *See Nunez,* 2000–NMSC–013, ¶ 102, 129 N.M. 63, 2 P.3d 264. As we have discussed, the forfeiture proceeding was dismissed only on the City's explicit condition that Ford not return the vehicle to Defendants. This condition altered Defendants' property interest; it does not matter that the City could reinstate the lawsuit.

{16} The State's problem in this case is that it did not follow the dictate of *Nunez* that to obtain both civil forfeiture and criminal penalties without double jeopardy prohibitions, "all forfeiture complaints and criminal charges for violations of the Controlled Substances Act may both be brought only in a single, bifurcated proceeding." *Id.* ¶ 104. Our Supreme Court did not offer an alternative, stating that "if [the government entity] elects to bring both a forfeiture complaint and a criminal proceeding growing out of the same facts, the action may be brought only in a single, bifurcated proceeding." *Id.* "There is no other way, under current New Mexico law, that the State will be able to prosecute, under the Controlled Substances Act, both the crime and the forfeiture." *Id.* ¶ 105.

{17} The City's forfeiture complaint was filed on June 4, 2001. The stipulated order of dismissal releasing the vehicle to Ford was entered on August 21, 2001. The criminal charges against both Defendants were not filed until October 1, 2001. There was never a single bifurcated proceeding as contemplat-

ed by *Nunez.* If the City and State had combined these cases in a single bifurcated proceeding, there would be no double jeopardy issue.

{18} Finally, we address the concerns raised by the City in its amicus curiae brief. First, the City essentially claims that our holding would be inconsistent with our Supreme Court's holding in *City of Albuquerque v. One (1) 1984 White Chevy Ut.,* 2002–NMSC–014, 132 N.M. 187, 46 P.3d 94 (*White Chevy* ). The City also argues that a broad reading of *Nunez* could have far-reaching results, thereby interfering with the City's ability to enforce nuisance abatement ordinances and interfering with its ability to enforce federally funded public housing mandates. First, as previously stated, there would not be any double jeopardy concerns if the government entity conducting the civil forfeiture proceeding simply followed the mandate of *Nunez* and brought both actions in a single bifurcated proceeding. *See Nunez,* 2000–NMSC–013, ¶ 104, 129 N.M. 63, 2 P.3d 264. With regard to the City's contention that our holding is inconsistent with *White Chevy,* we disagree. *Nunez* focuses on the punitive nature of the Controlled Substances Act. Our holding is based on the City's agreement prohibiting Ford from returning the vehicle to Defendants and the failure of the City and State to bring the civil forfeiture and criminal indictments in a single bifurcated proceeding. As the City admits, *White Chevy* dealt with the City's DWI vehicle forfeiture ordinance, not with the Controlled Substances Act. *See White Chevy,* 2002–NMSC–014, ¶ 1, 132 N.M. 187, 46 P.3d 94. Our Supreme Court concluded in *White Chevy* that the ordinance was remedial in its purpose, *id.* ¶ 19, in contrast to its conclusion in *Nunez* that a forfeiture pursuant to the Controlled Substances Act is punitive for double jeopardy purposes. *See Nunez,* 2000–NMSC–013, ¶ 52, 129 N.M. 63, 2 P.3d 264.

{19} The City also argues that our holding would adversely affect an innocent lienholder's ability to enforce its contract and repossess its property in the event of a seizure. However, nothing in our holding prevents an innocent lienholder from asserting its contractual rights in the event of a gov-

**318**

ernment seizure. In this case, it was the failure to follow the holding of *Nunez*, coupled with language included by the City unequivocally forbidding Ford from returning the vehicle to Defendants, that extinguished Defendants' property interest and caused jeopardy to attach.

*Unpreserved Issues*

{20} With regard to both Defendants, the State contends that the district court erred in granting the motion to dismiss in its entirety because the conduct at issue was not unitary. With regard to Tijerino, the State argues that the court erred in dismissing the prostitution charge because it had nothing to do with the forfeiture proceeding. The State admits that it failed to preserve this issue when the district court granted the motion to dismiss. A review of the transcript also reveals that the State did not raise these issues during its motion for reconsideration. Consequently, we will not consider these unpreserved issues on appeal. *State v. Tafoya*, 105 N.M. 117, 123, 729 P.2d 1371, 1377 (Ct.App.1986) (stating that "[i]ssues not preserved for review in the trial court need not be considered on appeal").

{21} The State also argues, relying on *State v. Alingog*, 117 N.M. 756, 877 P.2d 562 (1994), that it is entitled to raise these issues for the first time on appeal under the doctrine of fundamental error because it "would be a miscarriage of justice if the claim is not considered." We note that our Supreme Court in *Alingog* did not expressly hold that the doctrine of fundamental error was available to the State. Our Supreme Court stated:

The failure by the state to preserve error obviously does not itself constitute a miscarriage of justice; a miscarriage must exist *notwithstanding* failure to preserve error. Our rules requiring the preservation of questions for review are designed to do justice, and it is only when the merits of applying those rules clearly are outweighed by other principles of substantial justice that we will apply the doctrine of fundamental error. Rules of practice and procedure are devised to promote the ends of justice, not to defeat them.... Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Id.* at 760, 877 P.2d at 566 (internal quotation marks and citation omitted).

{22} In this case, the State admittedly failed to preserve its claims in two opportunities. We do not believe it would be a miscarriage of justice to affirm the district court's decision in granting the motion to dismiss in its entirety.

*Conclusion*

{23} The district court did not err in granting Defendants' motion to dismiss and dismissing the indictments in their entirety. Accordingly, we affirm the district court's decision.

{24} IT IS SO ORDERED.

KENNEDY and VIGIL, JJ., concur.