2007-NMCA-068

161 P.3d 290

**In the Matter of the ESTATE OF Salome DURAN, Deceased.**

**No. 26,342.**

Court of Appeals of New Mexico.

April 19, 2007.

Moses, Dunn, Farmer & Tuthill, P.C., Victor E. Carlin, Albuquerque, NM, for Appellants.

Scheuer, Yost & Patterson, P.C., Charles V. Henry, Kristin L. Davidson, Santa Fe, NM, for Appellee Joe Gallegos.

Leroy P. Duran, Daniel L. Duran, Rosemary D. Walker, Dina M. Duran, Jacob F. Duran, Pro Se Parties.

## OPINION

VIGIL, Judge.

{1} In *In re Estate of Duran (Duran I)*, 2003–NMSC–008, ¶ 34, 133 N.M. 553, 66 P.3d 326, the Supreme Court held that the cotenant ownership of 11.392 acres of land by five siblings was never dissolved although one of the siblings had claimed ownership of the entire tract by adverse possession. It remanded the matter to the district court. *Id.* Two of the siblings appeal from the Order of Complete Settlement of Estate by Personal Representative (Order of Complete Settlement) subsequently entered by the district court in which siblings who either did not participate in the prior proceedings or appeal were awarded an undivided one-fifth ownership of the property. We affirm the district court order and hold that the property shall be distributed as stated in the Order of Complete Settlement to all five co-tenants (or their estate or heirs) in the undissolved co-tenancy.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Macarita Sanchez was a widow who owned 11.392 acres of land in Taos County when she died intestate in 1932. Her five children, Salome, Evilia, Cinesio, Donaciana, and Felipe thereupon became cotenant owners of the 11.392 acres of land. In 1945, Salome took possession of the entire tract of land and paid all taxes for the property from that time until he died in 1998. In 1978, Salome conveyed the property in joint tenancy to himself and his wife, who subsequently preceded him in death. After Salome died, Evilia and Cinesio were the only children of Macarita that were still living. In the Salome Estate proceeding, Evilia and Cinesio asserted they each owned one-fifth of the parcel, and sought the imposition of a constructive trust and an accounting. Litigation followed in formal probate proceedings be-

fore the district court. The parties were Evilia, Cinesio, Salome's Estate (the Estate), and Donaciana's son, Joe Gallegos. No other parties chose to participate in the district court litigation, despite being given adequate notice. Ultimately, the district court agreed with Salome's Estate that he acquired title to the entire tract of land by adverse possession. The district court also found against Gallegos on his claim to a portion of the parcel. Gallegos did not appeal, but Evilia and Cinesio did. In a memorandum opinion, we affirmed the district court finding that Salome acquired title to the entire tract of land by adverse possession.

{3} The Supreme Court granted certiorari and reversed, concluding that two elements required to establish title by adverse possession on Salome's part were missing: hostile possession and good faith color of title. *Duran I*, 2003–NMSC–008, ¶ 1. The Supreme Court therefore held that the cotenancy was never dissolved and remanded the matter to the district court to reconsider in its discretion whether to impose a constructive trust or order an accounting. *Id.* ¶¶ 34–36.

{4} After the case was remanded to the district court, Evilia and Cinesio argued that the Estate only owned, at most, an indivisible one-fifth interest in the land, subject to a set off for the value of rent and profits for the time that Salome occupied the land. They added that since it might be difficult, if not impossible, to calculate these amounts, the court should order that they were at least equal to the value of the Estate's one-fifth ownership, making Evilia and Cinesio sole owners of the entire property. The Estate took the position that because the evidence at trial established that Salome and his four siblings had agreed that Salome could take possession of the land if he paid the taxes, without further obligation to them, the siblings had agreed to forego any claim for rents and profits. The Estate also argued that because Felipe's heirs did not participate in any of the litigation or appeals despite notice, and because Gallegos did not appeal the district court's adverse decision against him, they were bound by the original order that Salome acquired the entire property by adverse possession. The Estate

therefore asserted it owned an undivided three-fifths of the land, and Evilia and Cinesio each owned an undivided one-fifth.

{5} The district court advised the parties in a letter that it intended to decline to order an accounting because the siblings had agreed that Salome could live in the property without payment to them if he maintained the property and paid all the taxes, which he did. However, the district court remained unsure about how to divide the property, asking:

> Without good faith color of title, can adverse possession be had against those who did not appear, or did not appeal? Does the procedural status of the case in relation to heirs of Felipe and Donaciana prevail? Or does the failure to establish good faith color of title against the interests of Evilia and Cinesio trump the failure of the other heirs to assert their interests?

Following arguments addressed to these questions, the district court issued a letter setting forth its decision. The district court said that because the Supreme Court in *Duran I* held that the cotenancy of Macarita Sanchez's five children was never dissolved, "the ends of justice require that the estate [i.e., land] be distributed to those to whom it should have been decreed in the first place, namely all five cotenants in the undissolved cotenancy; and that to do otherwise, and grant to the [Estate] two additional shares simply because of the non-participation of cotenants would be an unjustified windfall."

{6} The district court then filed a Judgment on Remand, setting forth findings of fact, conclusions of law, and a judgment. Consistent with its letter, the district court concluded that, "[t]he five (5) children of [Macarita] Sanchez remained owners of undivided one-fifth (1/5) interests in the Property from the time of [Macarita] Sanchez's death to the present," and that, "[t]he ends of justice require that the Property be distributed to those to whom it should have been decreed in the first place, namely, all five (5) co-tenants [or their estate or heirs]." The district court also concluded that the Estate had no duty to provide an accounting of rents and profits to the other heirs of Macarita Sanchez. Judgment was entered imposing a

constructive trust upon Salome's Estate to hold the property for the benefit of Macarita Sanchez's five children (or their respective estates or heirs), each one having been adjudicated to be the owner of a one-fifth (1/5) undivided interest in the property; and denying the motion for an accounting. The Judgment on Remand was entered over the objection of Evilia and Cinesio, and they filed a notice of appeal.

{7} The Personal Representative of the Estate subsequently filed a "Petition for Order of Complete Settlement of Estate by Personal Representative," and after a hearing, the district court filed the Order of Complete Settlement. Therein, the district court found that as between the heirs of Macarita Sanchez, all issues pertaining to title to the 11.392 acres of land have been completely and absolutely resolved, and that the proceedings concerning title to that parcel "sufficed as a quiet title suit among the heirs" and "all issues which were, or which could have been, raised in said litigation have been fully resolved and adjudicated." It is also noted that a partition suit concerning the land is imminent, and that there was no longer any purpose to continue the constructive trust. The constructive trust was therefore terminated, and the Personal Representative was ordered to issue a deed to each heir of Macarita Sanchez (or their estate or heirs) conveying an undivided one-fifth interest in the 11.392 acres of land to each of them. The Estate was otherwise fully settled and closed.

{8} Evilia having passed away, her daughter and her daughter's husband, and Cinesio appeal from the Order of Complete Settlement. For the sake of continuity, we continue to refer to the appellants as Evilia and Cinesio. The Estate has not appeared in this appeal. However, Gallegos appears on his own behalf, seeking to affirm the district court.

## DISCUSSION

### 1. Timeliness and Propriety of the Appeal

{9} Evilia and Cinesio filed a notice of appeal from the Judgment on Remand, but did not perfect or pursue that appeal by filing a docketing statement, brief, or otherwise complying with the Rules of Appellate Procedure. After the Order of Complete Settlement was subsequently filed in the district court, Evilia and Cinesio timely appealed that order. Gallegos asserts that to the extent this appeal challenges the Judgment on Remand, it must be dismissed because: (1) the appeal is untimely and (2) the Judgment on Remand substantially complies with the Supreme Court's decision and mandate in the *Duran I* appeal, and it is not subject to further review. We disagree for the following reasons.

{10} First, the appeal is timely. An appeal only lies from a final order of the district court, and generally, "[a] judgment is not final unless all issues of law and of fact necessary to be determined have been determined, and the case has been completely disposed of to the extent the court has power to dispose of it." *In re Estate of Foster,* 102 N.M. 707, 712, 699 P.2d 638, 643 (Ct.App. 1985) (quoting *Clancy v. Gooding,* 98 N.M. 252, 254, 647 P.2d 885, 887 (Ct.App.1982)). Following the Judgment on Remand in this case, additional judicial oversight was required to secure the complete administration and settlement of the Estate. *See In re Estate of Foster,* 102 N.M. at 711–12, 699 P.2d at 642–43 (concluding that judgment which denied probate of alleged will, ruled that decedent died intestate, and ruled that distribution of decedent's estate should be in accordance with law of intestate succession was not a final order in part because further proceedings were contemplated by its terms). Because further judicial proceedings were contemplated by the Judgment on Remand, it was not a final, appealable order.

{11} Furthermore, in *In re Estate of Newalla,* 114 N.M. 290, 293, 837 P.2d 1373, 1376 (Ct.App.1992), we distinguished probate actions in which supervised administration has been ordered from those in which it has not. We noted that in ordinary probate actions it would be difficult, if not impossible, to determine whether an order is final, since, "in the absence of supervised administration, one cannot be certain whether any particular order entered ... will be followed by another order regarding the estate." *Id.* In order to address this difficulty, the Probate Code provides that each petition in a probate action is

ordinarily thought of as initiating an action. *Id.* at 293–94, 837 P.2d at 1376–77. Thus, ordinarily, an order disposing of all the issues raised in one petition is a final order for the purposes of appeal with respect to the issues in that petition. *Id.* But we also noted that where, as here, supervised administration is ordered, "the continuing authority of the district court ... extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding." *Id.* at 293, 837 P.2d at 1376 (internal quotation marks and citation omitted). We thus distinguished supervised administration actions because they do not create the same difficulty in determining whether an order is final. In this case, Evilia and Cinesio filed a petition seeking supervised administration of the Estate, which the parties resolved in a stipulated order in pertinent part directing that the personal representative "shall not transfer, dispose of nor convey [any real property of the decedent] without the written order of [the district court]." As a consequence of a second petition filed by Evilia and Cinesio, the district court also entered a subsequent order directing that the personal representative was "under the continuing authority of the district court." We construe these pleadings as establishing a supervised administration of the Estate, with the result that there was no final, appealable order until the Order of Complete Settlement was filed.

█ {12} Secondly, while our Supreme Court has stated, "[u]pon review of a second appeal the only issue is whether the trial court ... followed the appellate mandate," *In re Application of Mission Petroleum Carriers, Inc.,* 113 N.M. 477, 478, 827 P.2d 1291, 1292 (1992) (quoting *Genuine Parts Co. v. Garcia,* 92 N.M. 57, 60, 582 P.2d 1270, 1273 (1978)), we must consider what the Supreme Court ordered in the *Duran I* appeal, and what the district court subsequently did. The Supreme Court held that the cotenancy was never dissolved, leaving open the question of whether to impose a constructive trust or order an accounting. 2003–NMSC–008, ¶¶ 34–36. On the question of whether to impose a constructive trust, the Supreme Court emphasized that as an equitable reme-

dy, it was within the broad discretion of the district court to determine not only whether the remedy was appropriate, but how to shape it to fit the changing circumstances of the case and the relations of the parties. *Id.* ¶ 35. In the Judgment on Remand, the district court first declined to order an accounting, then imposed a constructive trust for the benefit of all five children in equal, undivided shares, even those children (or their estates or heirs) who did not participate in the underlying litigation and appeal. In this respect the district court complied with the mandate of the Supreme Court. However, to conclude from these facts alone that the Judgment on Remand is not subject to appellate review would have the effect of preventing any appellate review about whether the district court abused its discretion in either imposing the constructive trust or setting its parameters. Clearly, the Supreme Court mandate did not preclude appellate review of these issues.

{13} We therefore proceed to address the merits.

## 2. Imposition of Constructive Trust

{14} Evilia and Cinesio contend that because Felipe's heirs chose not to participate in any way in the prior trial and appeal, and because Gallegos did not participate in the appeal after the district court ruled he had no interest in the 11.392–acre parcel of property, they are all now precluded from claiming any interest in the property. Accordingly, they argue that the district court erred in awarding to each an undivided one-fifth interest in the property. Petitioners assert that, but for their appeal to this Court and the Supreme Court, Felipe's heirs and Gallegos would have no remaining interest in the property, and that it was error for them to benefit on remand. The facts concerning this issue are not in dispute; our review of this issue of law is therefore de novo. *See City of Albuquerque v. One (1) 1984 White Chevy Ut.,* 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94 (stating that when there are no disputed material facts, an appellate court reviews the issues on appeal under a de novo standard of review).

{15} Evilia and Cinesio's argument is grounded on two well-settled propositions. The first concerns the "law of the case" doctrine. Under this doctrine, a decision on an issue of law made in one stage of a case becomes binding precedent on successive stages of the same suit. *Cordova v. Larsen,* 2004–NMCA–087, ¶ 10, 136 N.M. 87, 94 P.3d 830. The second proposition, which is based on concepts of res judicata and collateral estoppel, concerns the effect of a judgment on a litigant who does not appeal, even if another party in the same case appeals and wins. *See In re Mut. Fund Market–Timing Litigation,* 468 F.3d 439, 443 (7th Cir.2006) ("Litigants who do not appeal from an adverse decision are stuck with it, even if some other party to the same case appeals and wins."); *see also State ex rel. State Highway Comm'n v. Quesenberry,* 72 N.M. 291, 294, 383 P.2d 255, 257 (1963) (stating the general proposition that where there is no appeal from a judgment, it is not subject to collateral attack); *State ex rel. Sofeico v. Heffernan,* 41 N.M. 219, 234, 67 P.2d 240, 249 (1936) (stating that a judgment that is not appealed becomes "res judicata as to any and all future litigation between the same parties" involving the question resolved). We have no quarrel with these propositions; however, the question presented here is whether any exceptions apply. Like the district court, we conclude that these principles are not applicable. We base our conclusion on the mandate of the Supreme Court and the nature of a cotenancy.

{16} In the prior appeal, the Supreme Court stated, "[A]ll five siblings became cotenant owners of the subject property when their mother died." *Duran I,* 2003–NMSC–008, ¶ 13 n. 2. The Supreme Court also expressly recognized, "The other putative cotenants of this tract have not participated in this matter despite being given adequate notice by the district court." *Id.* ¶ 6 n. 1. In context, this refers to Felipe's heirs, because in the same footnote, the Supreme Court also notes that the district court ruled against Gallegos on his claim that he owned a portion of the land, "and he has not appealed that ruling." *Id.* The remaining three siblings (or their heirs) were parties to the appeal. These two facts notwithstanding,

the Supreme Court expressly stated that it "held that the cotenancy was never dissolved." *Id.* ¶ 34. A cotenancy refers to ownership of property with unity of possession, meaning that each cotenant has a right to possess the whole. *Bankers Trust Co. v. Woodall,* 2006–NMCA–129, ¶ 7, 140 N.M. 567, 144 P.3d 126. "[U]nity of possession ... is, of course, simply another way of saying that the tenancy in common is a form of concurrent ownership." *Id.* (alteration in original) (quoting 4 David A. Thomas, *Thompson on Real Property* § 32.06(a), at 87 (David A. Thomas ed., 2d ed.2004)). Thus, the mandate of the Supreme Court required the district court on the remand, and this Court in this appeal, to recognize that *each* cotenant, whether he or she participated in the underlying litigation or any subsequent appeal, owned an undivided one-fifth ownership interest in the 11.392 acres of land their mother owned when she passed on.

{17} Faced with this reality, the district court expressed its view in its letter decision to the parties:

In our case, it is now clear that the cotenancy was never dissolved; that the ends of justice require that the estate [i.e., land] be distributed to those to whom it should have been decreed in the first place, namely all five cotenants in the undissolved cotenancy; and that to do otherwise, and grant to the estate of Salome Duran two additional shares simply because of the non-participation of cotenants would be an unjustified windfall.

{18} In arriving at its conclusion, the district court relied in part on *In re Estate of McDill,* 14 Cal.3d 831, 122 Cal.Rptr. 754, 537 P.2d 874 (1975) (in bank). *In re Estate of McDill* involved property owned by the decedent whose spouse preceded her in death. *Id.* at 875. The dispute was between two sisters, the sole heirs of the decedent, and their cousins, the sole heirs of the decedent's husband. *Id.* The issue was which group of heirs was entitled to inherit all of the property under certain California statutes, and the California Supreme Court held that the two sisters inherited the land to the exclusion of their cousins. *Id.* at 879. The California

Supreme Court then noted that only one of the sisters had appealed the decision of the trial court, and considered what effect, if any, this had on the non-participating sister's inheritance. *Id.* After recognizing the general principle that a judgment is considered final as to the nonappealing parties, the Court noted an "important exception," stating, "[W]here the part [of a judgment] appealed from is so interwoven and connected with the remainder, . . . that the appeal from a part of it . . . involves a consideration of the whole, . . . if a reversal is ordered it should extend to the entire judgment." *Id.* (alterations in original) (quoting *Whalen v. Smith,* 163 Cal. 360, 125 P. 904, 905 (1912)).

{19} The district court decision in this case was consistent with the mandate of the Supreme Court, and accurately took into account the concept of a cotenancy. Further, the district court decision does not contravene the law of the case doctrine or principles of collateral estoppel. *See Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 41, 125 N.M. 721, 965 P.2d 305 (stating that application of the law of the case doctrine is discretionary and flexible and not to be rigidly imposed); *Shovelin v. Cent. N.M. Elec. Coop.,* 115 N.M. 293, 299, 850 P.2d 996, 1002 (1993) (stating that whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, reviewed for an abuse of discretion on appeal); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct.App.1993) (stating that even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine); *Reeves v. Wimberly,* 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App.1988) (directing that collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair).

{20} Evilia and Cinesio argue that the district court's reliance on *In re Estate of McDill* is misplaced because *In re Estate of McDill* has been "soundly denounced" by the United States Supreme Court in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

We disagree. The only time *In re Estate of McDill* is specifically discussed in *Moitie* is in a footnote to Justice Blackmun's concurring opinion. *Moitie,* 452 U.S. at 403, 101 S.Ct. 2424 (Blackmun, J., concurring). Justice Blackmun specifically notes that *Moitie* is not a case in which the appealing and nonappealing parties made competing claims to a single piece of property, as in *In re Estate of McDill. Moitie,* 452 U.S. at 403, 101 S.Ct. 2424. We agree. In *Moitie,* seven private anti-trust class actions were brought in the federal court and consolidated. *Id.* at 395–96, 101 S.Ct. 2424. The trial court dismissed the lawsuits, and plaintiffs in five of the actions appealed. *Id.* at 396, 101 S.Ct. 2424. The other two plaintiffs chose to refile their actions in state court, and the defendants removed them to the federal court. *Id.* The actions of these two plaintiffs were then dismissed by the trial judge under the federal doctrine of res judicata. *Id.* at 396–97, 101 S.Ct. 2424. The United States Supreme Court ultimately held that res judicata barred those actions, even though the other five plaintiffs ultimately had their cases reinstated on appeal. *Moitie,* 452 U.S. at 398–402, 101 S.Ct. 2424. Thus, not only do the facts in *Moitie* differ greatly from the facts in the case before us, but we also do not understand the concurring opinion in *Moitie* as "denouncing" the rationale of *In re Estate of McDill.*

{21} *Moitie* refused to allow an equitable doctrine overlay to be considered when applying res judicata in the federal courts. 452 U.S. at 400, 101 S.Ct. 2424. This is clearly contrary to our decisions in *Trujillo, Hyden, Reeves,* and *Shovelin,* which do. To the extent that language in *Moitie* lends any support to Evilia and Cinesio, it is not binding on us, and we decline to follow it. It is well settled that res judicata and collateral estoppel are judicially created doctrines. *See City of Las Vegas v. Oman,* 110 N.M. 425, 432, 796 P.2d 1121, 1128 (Ct.App.1990) (stating that collateral estoppel, like res judicata, is a judicial economy measure); *Shovelin,* 115 N.M. at 299, 850 P.2d at 1002 (stating that the doctrine of collateral estoppel is a judicial doctrine, and whether to apply it is a judicial determination in the absence of a statute to the contrary). Our courts have

specifically recognized that the elements of collateral estoppel we apply may differ from the elements considered by federal courts, *see Edwards v. First Fed. Sav. & Loan Ass'n of Clovis,* 102 N.M. 396, 401–02, 696 P.2d 484, 489–90 (Ct.App.1985) (discussing differences between elements of collateral estoppel in New Mexico courts and federal courts), and we are required to adhere to elements established by the New Mexico Supreme Court. *Id.*

{22} We agree with the rationale of *In re Estate of McDill,* and hold that where a part of a judgment appealed from is so interwoven and connected with the remainder of the judgment, the appeal from a part of the judgment involves a consideration of the whole, and where reversal is ordered, the district court does not abuse its discretion by extending it to the entire judgment. *See Kuhn v. Kuhn,* 301 N.W.2d 148, 151–52 (N.D. 1981) (recognizing that there is an exception to the rule that a nonappealing party is bound by the decision of the lower court); *Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 864 (Mo.1990) (en banc) (stating that when the interests of the nonappealing party are so commingled with those of the appealing parties as to be inseparable, an appellate court may reverse the lower court's decision as to the nonappealing party); *Gino's Pizza of E. Hartford, Inc. v. Kaplan,* 193 Conn. 135, 475 A.2d 305, 309 (1984) (allowing a third-party defendant to assert on appeal claims of error in the main case even though the defendant/third-party plaintiff did not appeal from that judgment).

### 3. Issues Raised Only in Reply Brief

■ {23} Counsel for Evilia and Cinesio passed away during the pendency of the appeal and Evilia and Cinesio retained new counsel. In the reply brief, the new counsel advises us that a future partition suit and a quiet title action concerning the 11.392 acres of land at issue in this case are highly likely. Perhaps posturing in anticipation of these suits, counsel asks us to consider ordering or reimbursing attorney's fees and costs for the benefit of the efforts that appellants have brought to their siblings (or their estates or heirs) in "any partition suit, quiet title action, or in any other appropriate case or action"; to direct that they are entitled to introduce other evidence of ownership in any subsequent partition or quiet title action; to strike various findings of fact and conclusions of law made by the district court in this action; and to direct that the personal representative issue quitclaim deeds rather than "grant" deeds to the heirs. We decline to issue an advisory opinion concerning these matters for the purposes stated and leave the effects of the preceding and current litigation to established principles. Substitute counsel is not entitled to raise new issues that were not presented in the brief in chief. *See State v. Castillo–Sanchez,* 1999–NMCA–085, ¶ 20, 127 N.M. 540, 984 P.2d 787 (stating that the appellate court will not consider arguments raised for the first time in a reply brief).

### CONCLUSION

{24} For the foregoing reasons, we affirm the district court's Order of Complete Settlement.

{25} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.