IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-101

Filing Date:  August 2, 2011

Docket No. 30,285

STATE OF NEW MEXICO,

    Plaintiff-Appellant,

v.

JEROME D. BLOCK, a/k/a JEROME D.
BLOCK II and JEROME D. BLOCK, JR.,
and JEROME D. BLOCK, a/k/a JEROME
D. BLOCK, SR.,

    Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Michael E. Vigil, District Judge

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellant

Rothstein, Donatelli, Hughes, Dahlstrom,
Schoenburg & Bienvenu, LLP
Daniel Philip Estes
Carolyn M. "Cammie" Nichols
Albuquerque, NM

Freedman, Boyd, Hollander, Goldberg,
Ives & Duncan, PA
Zachary A. Ives
Theresa M. Duncan
Albuquerque, NM

for Appellees

James Harrington
Santa Fe, NM

for Amicus Curiae Common Cause

**OPINION**

**FRY, Judge.**

**{1}**     The secretary of state assessed fines against Jerome Block, Jr., (Block Jr.) for violations of the New Mexico Voter Action Act (the Act), NMSA 1978, Sections 1-19A-1 to -17 (2003, as amended through 2007), which provides public financing for certain candidates running for political office.  The attorney general then filed criminal charges against Block Jr. and his father, Jerome Block, Sr. (Block Sr.), for violations of the Act.  The district court dismissed the charges, holding that the attorney general may not initiate prosecution under the Act unless the secretary of state refers the violations to the attorney general for that purpose.  We reverse the dismissal because the Act does not limit the attorney general's authority to prosecute.  We also reject Block Jr.'s argument that prosecution following fine assessment violates principles of double jeopardy.

**BACKGROUND**

**I.     The Voter Action Act**

**{2}**     Enacted in 2003 as part of our comprehensive Election Code, the Act has not been analyzed in any prior case, and our review is thus a matter of first impression.  To frame our discussion, we begin by providing a brief overview of the Act's relevant statutory provisions.  The Act established a public campaign finance scheme for the purpose of financing the election campaigns of candidates running for various public offices in New Mexico. Sections 1-19A-2 to -17.  Toward that end, the Act created a "public election fund" for the purpose of "financing the election campaigns of certified candidates for covered offices."  Section 1-19A-10(A)(1).

**{3}**     Under the Act, candidates who are interested in obtaining public financing must undergo a certification process that is administered by the office of the secretary of state. Sections 1-19A-3 to -6, -16.  Upon certification, candidates become eligible to receive distributions from the public election fund during the election cycle and, in return, they are required to comply with all requirements of the Act. Section 1-19A-6(C).   These requirements include, among others, using disbursed funds only for campaign-related purposes, limiting total campaign expenditures to the amounts distributed from the public election fund, refraining from seeking contributions from any other source, and returning any unspent or unencumbered money to the public election fund at the time a person ceases to be a candidate. Section 1-19A-7.   The candidate must also report campaign-related

2

expenditures to the secretary of state in accordance with the campaign reporting requirements specified in the Act as well as in other portions of the Election Code. Section 1-19A-9. The Act charges the secretary of state with administering the Act's statutory provisions and directs the secretary of state to adopt rules to "ensure effective administration of the [Act]." Section 1-19A-15(A).

**{4}** This appeal concerns Section 1-19A-17, the sole penalties provision of the Act. This section prescribes penalties for violations of the Act, including a civil penalty of up to $10,000 per violation in Subsection (A) and a criminal penalty in Subsection (B) for a willful or knowing violation that is punishable as a fourth degree felony. Sections 1-19A-17(A), (B). In addition, candidates who violate the Act "may" be required to return money disbursed to their campaigns from the public election fund under Subsection (A) and "shall" be required to return such money under Subsection (B). *Id.* We address this provision in detail in our discussion.

## II.    Factual and Procedural History

**{5}** The underlying facts of this case stem from Defendant Block Jr.'s campaign for the office of commissioner of the New Mexico Public Regulation Commission during the 2008 election cycle. During the primary and general elections that year, Block Jr. ran as a certified candidate for office pursuant to the Act and, as a result, he was authorized to receive public campaign financing from the public election fund. Approximately $101,508 was disbursed to Block Jr.'s campaign from the public election fund throughout the 2008 election cycle.

### A.    The Secretary of State's Investigation and Assessment of Civil Fines Against Block Jr.

**{6}** On October 4, 2008, amid news reports that Block Jr. had allegedly misappropriated funds disbursed to him from the public election fund, the secretary of state initiated a preliminary inquiry into possible violations by Block Jr.'s campaign of the Act and the Campaign Reporting Act, NMSA 1978, Sections 1-19-25 to -36 (1979, as amended through 2009), both of which are closely situated statutory chapters within the Election Code. After a series of communications between the secretary of state and Block Jr. regarding the investigation into the purported violations, the secretary of state issued a notice of final action on November 1, 2008, in which she levied three fines totaling $11,000 against Block Jr. for three separate violations of the Act and the Campaign Reporting Act. In addition to the fines, the secretary of state required Block Jr. to return $10,000 of the $101,508 previously disbursed to his campaign from the public election fund and also to return a $700 donation made by Block Jr. from the disbursed funds. In sum, Block Jr. was required to pay a total of $21,700 to the secretary of state as a result of the three violations.

**{7}** Although the secretary of state determined that the three fines totaling $11,000 resulted from violations of both the Act and the Campaign Reporting Act, we describe the

three violations only in the context of the Act for purposes of our discussion. The first fine levied by the secretary of state, in the amount of $5,000, was based on a violation of Section 1-19A-9(D) of the Act for the "failure to accurately and truthfully report" a campaign expenditure. *See* § 1-19A-9(D) (requiring certified candidates under the Act to "report expenditures according to the campaign reporting requirements specified in the Election Code"). This fine corresponded to Block Jr.'s failure to correctly report a $2,500 payment to a musical group for rally entertainment that the group never actually provided.

{8} The second fine, also in the amount of $5,000, was based on a violation of Section 1-19A-7(D) of the Act for "improper use in the general election cycle of public funds earmarked for the primary election." *See* § 1-19A-7(D) (stating that "[a] certified candidate shall return to the secretary, within thirty days after the primary election, any amount that is unspent or unencumbered by the date of the primary election for direct deposit into the [public election] fund"). The secretary of state found that Block Jr. had failed to return the $2,500 paid to the musical group, although that amount should have been previously returned to the secretary of state's office within thirty days of the primary election. The third fine, in the amount of $1,000, was based on a violation of Section 1-19A-7(A) of the Act for the use of disbursed public election funds for non-campaign related purposes. *See* § 1-19A-7(A) (stating that "[a]ll money distributed to a certified candidate shall be used for that candidate's campaign-related purposes in the election cycle in which the money was distributed"). This fine corresponded to a $700 contribution by Block Jr. from the funds disbursed to his campaign in order to help retire a former presidential candidate's campaign debt.

{9} The secretary of state's notice of final action indicated that a copy of the notice was transmitted to the office of the New Mexico Attorney General. On appeal, the parties agree that aside from sending a copy of the notice to the attorney general's office, the secretary of state made no express decision to refer the matter to the attorney general for criminal prosecution. During the proceedings below, the secretary of state stated that any decision as to whether a criminal prosecution should be initiated for violations of the Act was beyond her statutory purview and area of expertise and that her office did not make any kind of referral to the attorney general's office for criminal prosecution.

## B.     Criminal Proceedings Against Block Jr. and Block Sr.

{10} On April 8, 2009, approximately five months after the secretary of state's final action against Block Jr., a grand jury indicted Block Jr. for: (1) two counts of willfully or knowingly violating the Act and other provisions of the Election Code (Counts 1 and 3), (2) two counts of conspiracy to commit violations of the Act and other provisions of the Election Code (Counts 2 and 4), (3) one count of tampering with evidence, (4) one count of conspiracy to commit tampering with evidence, and (5) two counts of embezzlement over $500 but not more than $2,500. On the same date, a grand jury indicted Block Jr.'s father, Defendant Block Sr. for: (1) one count of willfully or knowingly violating the Act and other provisions of the Election Code (Count 1), (2) one count of conspiracy to commit a violation

4

of the Act and other provisions of the Election Code (Count 2), (3) one count of tampering with evidence, and (4) one count of conspiracy to commit tampering with evidence. Pursuant to Rule 5-203(B) NMRA, the charges against Block Jr. and Block Sr. (collectively, Defendants) were joined.

{11}   Subsequently, Defendants moved to dismiss specific counts in the indictments. Defendants initially filed a joint motion in district court to dismiss all charges brought under the Act, arguing that the attorney general lacked statutory authority to initiate criminal proceedings for violations of the Act. Defendants asserted that the attorney general's broad authority to prosecute criminal cases under NMSA 1978, Section 8-5-2 (1975), was limited by the Act. Specifically, Defendants contended that the plain language of the Act's penalties provision requires the attorney general's office to receive a referral from the secretary of state prior to initiating criminal prosecutions for violations of the Act. Because no such referral allegedly occurred in this case, Defendants argued that the attorney general lacked the authority to prosecute the charges brought under the Act. In addition to this joint motion, Block Jr. separately moved to dismiss three specific counts of the indictment—1 and 2 (both for violations of the Act), and 7 (for embezzlement)—on double jeopardy grounds. Specifically, Block Jr. argued that the fines levied by the secretary of state constituted criminal punishment for purposes of the double jeopardy clause of the New Mexico Constitution and therefore precluded a successive criminal prosecution for the same conduct.

{12}   After a hearing on both motions, the district court issued an order granting the joint motion filed by Defendants as well as the separate motion filed by Block Jr. The court determined that the plain language of the Act's penalties provision permitted "the secretary of state to *either* impose a fine if she or he finds a violation of the [Act] *or* transmit a finding of a violation to the attorney general for prosecution, *but not both*." (Emphasis added.) The court reasoned that the attorney general lacked the statutory authority to prosecute violations of the Act without a prior referral from the secretary of state and, further, that "had the Legislature intended to allow the attorney general to exercise his or her usual broad authority to initiate criminal charges without the secretary of state having [first] transmitted findings of a violation, it would have said so." Because the secretary of state had levied fines and also testified at the hearing that she did not make a referral to the attorney general's office, the court held that the attorney general lacked prosecutorial authority to initiate criminal proceedings against Defendants for violations of the Act. On this basis, the court dismissed all charges brought for violations of the Act against both Defendants.

{13}   The district court further determined, as a separate and alternate ground supporting dismissal, that all charges brought under the Act violated Block Jr.'s state constitutional protections against double jeopardy. The court found that legislative intent behind the Act authorized imposition of either a civil penalty or criminal prosecution, but not both and, therefore, the prior issuance of civil penalties in this case precluded any subsequent criminal prosecution for the same underlying conduct. The court further reasoned that the civil penalties levied by the secretary of state constituted criminal punishment because they were more punitive than remedial in nature and that any subsequent criminal charges brought

5

under the Act for conduct previously punished through the civil penalties resulted in a violation of double jeopardy. Accordingly, the district court dismissed all charges brought under the Act against Block Jr., with the order specifically referencing Counts 1-4. This appeal followed. The district court granted a stay of all further proceedings pending resolution of this appeal.

**DISCUSSION**

{14}     On appeal, the State contends that the district court erroneously determined that: (1) the attorney general has no authority to prosecute criminal violations of the Act without a prior referral from the secretary of state, and (2) double jeopardy precludes criminal prosecution for violations of the Act based on the same conduct for which the secretary of state has previously assessed a civil penalty. These issues hinge on our interpretation of Section 1-19A-17, the penalties provision of the Act. We address each issue in turn.

**I.     Attorney General's Authority to Prosecute Criminal Violations of the Act**

{15}     We begin by examining the basic statutory grant of authority to the attorney general. In New Mexico, the attorney general has no common law powers; instead, his/her duties are determined entirely by statute. *State v. Davidson*, 33 N.M. 664, 669, 275 P. 373, 375 (1929). The basic statutory grant of authority to the attorney general is set forth in NMSA 1978, Section 8-5-2(B) (1975), which provides in relevant part that: "Except as otherwise provided by law, the attorney general shall . . . prosecute and defend in any other court or tribunal all actions and proceedings, civil or criminal, in which the state may be a party or interested when, in his [or her] judgment, the interest of the state requires such action." Section 8-5-2(B). Thus, "Section 8-5-2 provides authority for the [attorney general] to prosecute criminal cases in any court when the [s]tate's interest requires such action," but that authority may be limited or conditioned where the Legislature has "otherwise provided by law." *State v. Koehler*, 96 N.M. 293, 295, 629 P.2d 1222, 1224 (1981) (internal quotation marks omitted).

{16}     The first issue is whether the Legislature has "otherwise provided" in Section 1-19A-17 for a limitation on the attorney general's authority to initiate criminal prosecutions for violations of the Act. The district court construed Section 1-19A-17 to limit the attorney general's authority to initiate criminal proceedings under the Act to only the circumstance where a prior referral has been received from the secretary of state. In addition, the district court construed the word "or" in Section 1-19A-17(A) to be disjunctive and to denote mutually exclusive alternatives—i.e., meaning that the secretary of state shall either impose a fine for a violation or transmit the finding to the attorney general for criminal prosecution, but not both. *See* § 1-19A-17(A) ("If the secretary makes a determination that a violation of [the A]ct has occurred, the secretary shall impose a fine *or* transmit the finding to the attorney general for prosecution." (emphasis added)). On these grounds, the district court concluded that the attorney general exceeded the scope of his prosecutorial authority under the Act by initiating criminal proceedings against Defendants without first receiving a

6

referral from the secretary of state.[1] Our review of the district court's holding presents issues of statutory construction concerning Section 1-19A-17 of the Act.

**{17}** We apply de novo review to questions of statutory interpretation. *State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768, 82 P.3d 939. "The primary aim of statutory construction is to give effect to the intent of the Legislature." *State v. Lewis*, 2008-NMCA-070, ¶ 6, 144 N.M. 156, 184 P.3d 1050 (internal quotation marks omitted). In discerning legislative intent, we are aided by canons of statutory construction, and we look first to the plain language of the statute to determine if the statute can be enforced as written. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. "Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks omitted). If, however, the language of the statute is "doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction," we reject the plain meaning rule in favor of construing the statute "according to its obvious spirit or reason." *Davis*, 2003-NMSC-022, ¶ 6.

**{18}** We begin with the language of Section 1-19A-17, which reads:

> A. In addition to other penalties that may be applicable, a person who violates a provision of the Voter Action Act is subject to a civil penalty of up to ten thousand dollars ($10,000) per violation. In addition to a fine, a certified candidate found in violation of that act may be required to return to the fund all amounts distributed to the candidate from the fund. *If the secretary makes a determination that a violation of that act has occurred, the secretary shall impose a fine or transmit the finding to the attorney general for prosecution.* In determining whether a certified candidate is in violation of the expenditure limits of that act, the secretary may consider as a mitigating factor any circumstances out of the candidate's control.

> B. A person who willfully or knowingly violates the provisions of the Voter Action Act or rules of the secretary or knowingly makes a false statement in a report required by that act is guilty of a fourth degree felony

---

[1]Because the State conceded below and again at oral argument that the secretary of state did not make a referral to the attorney general in this case, we do not reach the issue of whether the secretary of state's transmission of the notice of final action to the attorney general—as evidenced by the fact that the notice, on its face, indicated that a copy was sent to the attorney general—constitutes a referral (transmission for prosecution). Although we are not bound to accept the State's concessions, our holding here does not require us to reach this issue.

and, if he is a certified candidate, shall return to the fund all money distributed to that candidate.

Section 1-19A-17 (emphasis added) (citations omitted). Looking at the language, we observe that the attorney general is mentioned only once in the section, as the official recipient of referrals from the secretary of state. Section 1-19A-17(A). There is no language in either subsection that expressly states what the attorney general shall or may do regarding violations of the Act. Subsection (A) specifies only what the secretary of state "shall" or "may" do in administering the Act, without explicitly addressing the attorney general's authority to prosecute criminal violations of the Act. Similarly, Subsection (B) specifies the nature of the criminal penalties available for violations of the Act, again without specifically addressing the attorney general's authority or the procedures by which a criminal prosecution may arise. Defendants have not argued that the Act includes any explicit language limiting the authority of the attorney general; rather, their arguments are focused on construing the word "or," as mentioned above, as a limitation on the attorney general's prosecutorial authority.

**{19}** Although "[l]egislative silence is at best a tenuous guide to determining legislative intent," *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993), the fact remains that there is no express language in Section 1-19A-17 or elsewhere in the Act specifying the nature of or any limit on the attorney general's authority to initiate criminal prosecutions for violations of the Act. We also assume that the Legislature was aware of Section 8-5-2 when it drafted the Act and that, had the Legislature intended for the Act to "otherwise provide" a limitation on the attorney general's authority under Section 8-5-2, it could have included such limiting language in the Act. *See El Vadito de los Cerrillos Water Ass'n v. N.M. Pub. Serv. Comm'n*, 115 N.M. 784, 789, 858 P.2d 1263, 1268 (1993) (assuming that the Legislature is aware of existing laws at the time of subsequent legislation). As a result, the attorney general's basic statutory grant of authority in Section 8-5-2 plays an important role in our analysis and cannot be ignored.

**{20}** The district court held that the following language in Section 1-19A-17 acts as a limitation on the attorney general's authority to initiate criminal proceedings against Defendants: "If the secretary makes a determination that a violation of [the Act] has occurred, the secretary shall impose a fine *or* transmit the finding to the attorney general for prosecution." Section 1-19A-17(A) (emphasis added). The district court concluded that the "or" denotes mutually exclusive alternatives and, thus, if the secretary of state elects to issue a fine, as in this case, the attorney general has no authority to commence a prosecution. We are not persuaded that this is a reasonable interpretation of the meaning of Section 1-19A-17(A).

**{21}** The word 'or' in legislative acts is not given its normal disjunctive meaning if it will frustrate evident legislative intent, if adherence to the literal use of the word leads to absurdity or contradiction, and if the context of the section and other statutes read in conjunction with the section call for a different interpretation. *See Swink v. Fingado*, 115

8

N.M. 275, 279 n.10, 850 P.2d 978, 983 n.10 (1993) (indicating that "or" is a conjunction and that "the alternatives are not necessarily mutually exclusive"); *Hale v. Basin Motor Co.*, 110 N.M. 314, 318, 795 P.2d 1006, 1010 (1990) ("The word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise."); *First Nat'l Bank v. Bernalillo Cnty. Valuation Protest Bd.*, 90 N.M. 110, 112, 560 P.2d 174, 176 (Ct. App. 1997) (stating that the "ordinary meaning [of 'or'] should be followed unless it renders the statute doubtful or uncertain"). Courts do not inexorably apply the rule that the use of the disjunctive "or" means only that one of the listed choices can be employed, if a "strict grammatical construction will frustrate evident legislative intent . . . [or] statutory context can render the distinction [between "and" and "or"] secondary." Yule Kim, Legislative Attorney, American Law Division, Congressional Research Service, *CRS Report for Congress, Statutory Interpretation: General Principles and Recent Trends* (Updated August 31, 2008), page 8 (internal quotation marks omitted) (citing cases indicating that "the word 'or' is often used as a careless substitute for the word 'and'"; and that "[b]oth 'and' and 'or' are context-dependent, and each word 'is itself semantically ambiguous, and can be used in two quite different senses"); *see also* 1A Norman J. Singer, *Statutes & Statutory Construction* § 21:14, at 185-89 (7th ed. 2009) (observing that there has been "such laxity in the use of [the terms 'and' and 'or']" and then describing cases where courts have found the terms to be interchangeable if this is more consistent with legislative intent). Here, all of these considerations bear on the issue.

**{22}** Section 1-19A-17(A) sends mixed signals and raises questions as to its intent in regard to administrative civil penalties and criminal prosecutions. The section opens with the phrase, "[i]n addition to other penalties that may be applicable." Construed broadly, this phrase includes civil penalties in other statutes and criminal penalties for violation of criminal laws. Such penalties would include that for a Section 1-19A-17(B) felony. Nothing in Section 1-19A-17(A) indicates a legislative intention to make the secretary of state a gatekeeper with prosecutorial discretion to determine whether probable cause exists to prosecute a Section 1-19A-17(B) felony or whether a felony charge instead of a civil penalty ought to be pursued. Nothing in that section indicates an intent to preclude the attorney general from prosecuting that felony. The more reasonable view of the section is that the administrative penalty was intended as a remedial remedy to cover violations that were neither willful nor knowing, with a prosecution still open for violations that were willful or knowing. We doubt that the Legislature meant the wording in that section to place the secretary of state in an "either/or" straitjacket or by implication to hamstring the attorney general when a felony has been committed. We are unpersuaded that the Legislature would enact a criminal felony proscription intending a violation of it to be rendered unenforceable at the whim of the secretary of state.

**{23}** The Act contains no express language addressing the authority of the attorney general to act, and Section 1-19A-17 speaks only to the duties of the secretary of state without addressing the authority of the attorney general. Therefore, the language of the Act does not "otherwise provide" for a limitation on the attorney general's authority under Section 8-5-2 to prosecute criminal violations of the Act. The word "or" in Subsection (A) of Section 1-

9

19A-17 denotes choices that are not mutually exclusive and, as a result, the issuance of a civil penalty does not preclude the possibility of subsequent prosecution.

## II.    Double Jeopardy Analysis

**{24}**    We next address whether double jeopardy barred the prosecution of Block Jr. due to the previous assessment of civil penalties against him by the secretary of state. On appeal, the State and amicus curiae Common Cause contend that the district court erroneously dismissed Counts 1 - 4 of the indictment against Block Jr. on the alternate ground that double jeopardy barred the imposition of successive civil and criminal penalties under the Act for the same conduct by Block Jr.

**{25}**    Block Jr. concedes that it was error for the district court to dismiss Counts 3 and 4 on double jeopardy grounds because the conduct alleged in these counts was not the same conduct for which Block Jr. was fined. As a result, because there is no dispute that the conduct underlying Counts 3 and 4 and the conduct that resulted in the secretary of state's action concerned separate offenses and therefore was not unitary, we reverse the district court's order as to these two charges.

**{26}**    As for the remaining counts, we must determine whether New Mexico's constitutional and statutory double jeopardy provisions bar criminal prosecution under the Act for conduct for which the secretary of state has previously assessed a "civil penalty."[2] We apply de novo review to this legal question. *See State v. Kirby*, 2003-NMCA-074, ¶ 12, 133 N.M. 782, 70 P.3d 772.

**{27}**    Because Block Jr. does not assert a violation of the federal double jeopardy clause, our analysis is limited to our state's double jeopardy jurisprudence. The New Mexico Constitution's double jeopardy clause states that "[n]o person shall . . . be twice put in jeopardy for the same offense." N.M. Const. art II, § 15. Similarly, our state double jeopardy statute provides that "[n]o person shall be twice put in jeopardy for the same crime." NMSA 1978, § 30-1-10 (1963). It is well established that these provisions protect "against the imposition of multiple criminal punishments for the same offense and then only when such occurs in successive proceedings." *City of Albuquerque v. One (1) 1984 White Chevy Util.*, 2002-NMSC-014, ¶ 7, 132 N.M. 187, 46 P.3d 94 (internal quotation marks

---

[2]Our use of the label "civil penalty" throughout the double jeopardy analysis is based on Section 1-19A-17, which refers to the secretary of state's assessment of monetary fines against violators of the Act as a "civil penalty." Section 1-19A-17A (stating that "a person who violates a provision of the . . . Act is subject to a civil penalty of up to ten thousand dollars ($10,000) per violation" (citation omitted)). We clarify that the secretary of state's assessment of three fines totaling $11,000 against Block Jr. are the "civil penalties" we refer to throughout our analysis.

omitted). In this context, our Supreme Court has recognized that a "legislature may impose both a criminal and a civil sanction in respect to the same act or omission without violating the Double Jeopardy Clause." *Id.* (internal quotation marks omitted).

{28} In *State ex rel. Schwartz v. Kennedy*, our Supreme Court delineated the following three-part framework for determining whether double jeopardy bars successive criminal and civil sanctions for the same conduct: "(1) whether the [s]tate subjected the defendant to separate proceedings[,] (2) whether the conduct precipitating the separate proceedings consisted of one offense or two offenses[,] and (3) whether the penalties in each of the proceedings may be considered 'punishment' for the purposes of the Double Jeopardy Clause." 120 N.M. 619, 626, 904 P.2d 1044, 1051 (1995). In applying the third *Schwartz* factor, a reviewing court determines whether the penalty constitutes "punishment" by considering (1) the Legislature's "purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant"; and (2) "whether the sanction established by the legislation was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect." *White Chevy*, 2002-NMSC-014, ¶ 11 (internal quotation marks omitted). We apply the *Schwartz* framework to this case.

## A.      First and Second *Schwartz* factors:  Separate Proceedings and Unitary Conduct

{29} The parties are in agreement regarding the first and second *Schwartz* factors. With regard to the first *Schwartz* factor, it is uncontroverted that the action by the secretary of state that resulted in the levying of civil penalties against Block Jr. and the subsequent criminal prosecution in district court were two separate proceedings. As for the second *Schwartz* factor, the State conceded below, and again on appeal, that the conduct underlying Counts 1 and 2 of the indictment against Block Jr. was the same conduct that precipitated the secretary of state's investigation and assessment of monetary penalties.

## B.      Third *Schwartz* factor:  Whether the Civil Penalty Constitutes "Punishment"

{30} With regard to Counts 1 and 2, the dispositive issue before us is the third *Schwartz* factor—whether the civil penalties levied by the secretary of state against Block Jr. are considered "punishment" for purposes of the double jeopardy clause so as to preclude subsequent criminal prosecution. As stated above, our Supreme Court has stated that courts should determine whether a sanction is "punishment" for double jeopardy purposes by first considering the Legislature's purpose in enacting the penalty and, second, whether the penalty is so punitive in its effect that, on balance, the punitive effects outweigh its remedial effect. *White Chevy*, 2002-NMSC-014, ¶¶ 8, 11.

{31} The district court answered the third *Schwartz* factor in the affirmative, determining that the civil penalties imposed by the secretary of state were more punitive than remedial in nature and that this was sufficient to bar Block Jr.'s subsequent criminal prosecution on double jeopardy grounds. On appeal, we conclude that the district court's determination was incorrect and, accordingly, we reverse the district court's dismissal of Counts 1 and 2 on this

basis. As we explain more fully below, our review of legislative intent and the effects of the civil penalty indicates that the civil penalty is not considered "punishment" under the third *Schwartz* factor and, therefore, it does not preclude subsequent criminal prosecution for the same conduct.

**1.      Legislative Intent**

**{32}**    In applying the third *Schwartz* factor, we must first ascertain the Legislature's purpose in enacting the Act and, specifically, Section 1-19A-17. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) (explaining that "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction" and that "[a] court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other" (internal quotation marks and citation omitted)).

**{33}**    Although the Act does not specifically enumerate its purposes, it is clear that the Act's provisions are directed at establishing a public campaign financing system that is subject to considerable oversight by the office of the secretary of state. Sections 1-19A-2 to -17.   There is no question that the Act's provisions establish a regulatory and administrative scheme for the management of public campaign funds. *Id.* This is evidenced by the provisions covering the certification process, Sections 1-19A-3 to -6, -16, management of and disbursements from the public election fund, Sections 1-19A-10 to -14, and candidate expenditures and reporting requirements, Sections 1-19A-7 to -9.

**{34}**    It is therefore apparent that the Act, as a whole, is directed to a remedial purpose. Its provisions are aimed at protecting against misappropriation of public campaign funds, promoting transparency in campaign expenditures, and protecting the public from deceptive practices by candidates. Also, the Act is part of our state Election Code, a statutory chapter that was enacted with the purpose of "secur[ing] . . . the purity of elections and guard[ing] against the abuse of the elective franchise" and "to provide for efficient administration and conduct of elections." NMSA 1978, § 1-1-1.1 (1979). The inclusion of the Act within the Election Code further reflects the intent of the Legislature to create a remedial regulatory and administrative scheme for the management of public campaign funds. *Cf. State v. Nunez*, 2000-NMSC-013, ¶ 52, 129 N.M. 63, 2 P.3d 264 (determining that the penalty provisions of the Controlled Substances Act, which is part of the Criminal Code, were punitive in nature because that act "d[id] not concern a regulated lawful activity, but rather an illegal criminal activity").

**{35}**    We also conclude that the civil penalty in Section 1-19A-17 evinces a remedial and regulatory purpose. Under Subsection (A) of Section 1-19A-17, the secretary of state has the authority to impose a civil penalty for violations of the Act, and the secretary of the state may also require a violator to return any funds he/she was disbursed from the public election fund. Subsection (A) also includes language that the imposition of a civil penalty and the return of disbursed funds is "[i]n addition to other penalties that may be applicable." *Id.* As

12

a result, the civil penalty is one of multiple tools of regulatory and administrative enforcement available to the secretary of state to ensure compliance with the Act. *See Kirby*, 2003-NMCA-074, ¶ 26. This further supports our view that the Legislature intended that the civil penalty "constitute an integral part of an overall remedial regulatory and administrative scheme to protect the public." *Id.*

**2.      Balancing of Remedial and Punitive Effects of the Civil Penalty**

{36}     Having determined that the Act has a remedial purpose, we next address whether the civil penalty "was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect." *Id.* ¶¶ 22, 27 (internal quotation marks omitted). We do so because "[e]ven in those cases where the [L]egislature has indicated an intention to establish a civil penalty," it is still possible that the Act's statutory scheme is "so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99 (alteration omitted) (internal quotation marks and citation omitted).

{37}     Our inquiry here centers on a seven-factor, non-exhaustive framework established by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), and previously adopted by this Court in *Kirby*:

> (1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Kirby*, 2003-NMCA-074, ¶ 28 (alteration in original) (internal quotation marks omitted). As we explain more fully below, upon applying the seven *Mendoza-Martinez* factors, we conclude that the civil penalty in the Act is more remedial than punitive in its effect.

{38}     First, the administrative sanctions that the secretary of state can impose under the Act—i.e., a civil penalty of up to $10,000 per violation and the return of disbursed funds—do not constitute an affirmative disability or restraint. These sanctions unequivocally do not approach "the infamous punishment of imprisonment," *Kirby*, 2003-NMCA-074, ¶ 30 (internal quotation marks omitted), "which is the paradigmatic affirmative disability or restraint." *Smith v. Doe*, 538 U.S. 84, 100 (2003). Contrary to Block Jr.'s assertion that the civil penalty imposes an affirmative restraint on a candidate's ability to run for public office, any civil penalty imposed by the secretary of state under the Act does not bar a fined candidate from continuing his or her current campaign or from running for public office in the future. *See* § 1-19A-17(A). As a result, the civil penalty carries neither the

13

stigma nor the harsh consequences of a criminal conviction on a candidate's election-related activities. *Kirby*, 2003-NMCA-074, ¶ 30; *see* NMSA 1978, § 31-13-1(A), (E) (2005) (stating that, unless certain conditions are met, a person convicted of a felony cannot vote or hold an office of public trust).

**{39}** Second, the civil penalty that may be imposed under the Act has not historically been regarded as punishment and is instead traditionally viewed as a form of civil remedy. *Kirby*, 2003-NMCA-074, ¶ 31 (Blackmun, J., concurring) ("[M]onetary assessments are traditionally a form of civil remedy[.]" (quoting *United States v. Ward*, 448 U.S. 242, 256 (1980)); *see Hudson*, 522 U.S. at 104 ("[N]either money penalties nor debarment has historically been viewed as punishment.").

**{40}** Third, we conclude that the civil penalty does "not come into play *only* on a finding of scienter." *Kirby*, 2003-NMCA-074, ¶ 32 (emphasis added) (internal quotation marks omitted). Section 1-19A-17(A) allows the secretary of state to assess a civil penalty against any "person who violates a provision of the [Act]" without regard to the violator's state of mind or culpable intent. By contrast, Section 1-19A-17(B) provides for criminal penalties only where the person has "willfully or knowingly violate[d] the provisions of the [Act]." As a result, we view the penalties provision of the Act to require a finding of scienter only in connection with the imposition of a criminal penalty. To the extent that Block Jr. argues that a finding of scienter comes into play for the civil penalty because "the secretary [of state] may consider as a mitigating factor any circumstances out of the candidate's control" in determining whether a violation of Section 1-19A-17(A) has occurred, we are unpersuaded. Because consideration of mitigating factors is a discretionary act—as evidenced by the use of the word "may" in the statutory provision—we agree with the State's position that a civil penalty can be imposed under the Act even without consideration of mitigating factors. *See* NMSA 1978, § 1-1-3 (1969) (stating that "[a]s used in the Election Code, 'shall' is mandatory and 'may' is permissive" (citation omitted)). Consequently, the civil penalty does not come into play *only* on a finding of scienter, as required under the third *Mendoza-Martinez* factor. *Cf. Hudson*, 522 U.S. at 104 (reasoning that consideration of the violator's "good faith" in determining the amount of the penalty to be imposed did not signify that the penalty comes into play *only* on a finding of scienter because the "penalty can be imposed even in the absence of bad faith").

**{41}** Fourth, we consider whether the imposition of a civil penalty under the Act promotes the traditional aims of punishment—retribution and deterrence. This Court has previously recognized that it would be against common sense to conclude that a "civil penalty [such as the one imposed by the Act] does not have some punitive and deterrent aspects in its nature." *Kirby*, 2003-NMCA-074, ¶ 33. But our Supreme Court has emphasized that "[a]lthough a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose." *White Chevy*, 2002-NMSC-014, ¶ 11. Similarly, we have stated that "the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal [for double jeopardy purposes], as deterrence may serve civil as well as criminal goals." *Kirby*, 2003-NMCA-074, ¶ 34 (internal quotation

14

marks omitted).  We therefore reject Block Jr.'s assertion that the civil penalty at issue here promotes only punitive purposes.

**{42}**     We do not consider the negative effect of the penalty on Block Jr. to conclusively establish that the penalty constitutes "punishment" because, as previously noted, "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment." *Schwartz*, 120 N.M. at 631, 904 P.2d at 1056 (internal quotation marks omitted).  In addition, although the imposition of the civil penalty will likely deter future wrongdoing by other certified candidates, the civil penalty serves important non-punitive goals, such as promoting transparency in our state's public campaign financing scheme, regulating the use of disbursed public funds by campaigns, and increasing public confidence in our state electoral system. *See Kirby*, 2003-NMCA-074, ¶ 34 (holding that although sanctions in the Securities Act had deterrent effects, the sanctions served important non-punitive goals, were remedial in nature, and were "plainly part of the director's arsenal for regulation of persons dealing in the sale of securities . . . and [spoke] as much, if not more, to that regulatory challenge than to a sole need to punish"); *see also Hudson*, 522 U.S. at 105 (concluding that although the monetary sanctions at issue were "intended to deter future wrongdoing, [they] also serve[d] to promote the stability of the banking industry" and thus, "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the [g]overnment's ability to engage in effective regulation").  Because the civil penalty reasonably serves the regulatory goals of the Act and protects the public, we conclude that any deterrent or punitive effects of the civil penalty "are incidental to and do not override the Act's and the civil penalty's primarily remedial purpose." *Kirby*, 2003-NMCA-074, ¶ 34.

**{43}**     Fifth, it is undisputed that the conduct upon which the civil penalties were based also formed the basis of Counts 1 and 2 of Block Jr.'s indictment.  However, "although we answer this *Mendoza-Martinez* issue affirmatively, this fact is insufficient to render the money penalties . . . criminally punitive . . . particularly in the double jeopardy context." *Kirby*, 2003-NMCA-074, ¶ 35  (alteration omitted) (internal quotation marks omitted).

**{44}**     Finally, we consider the sixth and seventh factors together:  whether "there exists an alternative, remedial, purpose to which the civil penalty may rationally be connected" and whether "imposition of the civil penalty . . . appear[s] excessive in relation to the [Act's alternative] purpose" assigned. *Id.* ¶¶ 36-37.  The district court determined that the civil penalty was not earmarked for specific remedial purposes and, further, that any remedial goals of the Act were accomplished by the reimbursement aspect of Section 1-19A-17(A), which requires violators to return disbursed funds to the secretary of state.  On appeal, the State argues that the civil penalty is connected to the alternative remedial purpose of "promoting openness and honesty and keeping corruption out of New Mexico's publicly financed election campaigns."  It argues that the civil penalty is "integral to enforcing regulatory compliance" with conditions imposed by the Act to protect these remedial interests.  The State further asserts that the civil penalty is earmarked for return to the public

election fund "for the purpose of . . . recouping administrative and enforcement costs. Section 1-19A-15(B)(5) (directing the secretary of state to establish procedures for the return of fund disbursements and "other money" to the public election fund); Section 1-19A-10(A)(2) (stating that one purpose of the public election fund is "paying administrative and enforcement costs" of the Act).

**{45}** We agree with the State's position as to the sixth factor. It is clear that the civil penalty is connected to the remedial purpose of protecting our state's publicly financed election campaign system from misappropriation and to insuring that public funds are not subject to unlawful and deceptive practices. The use of the civil penalty toward the administrative and enforcement costs of the Act serves that purpose. As for the seventh *Mendoza-Martinez* factor, we conclude that the civil penalty is integral to the remedial goals of the Act and that it does not appear excessive in relation to these goals. The district court incorrectly determined that reimbursement of disbursed funds would remedy any harm arising from violations of the Act because reimbursement would not include the costs of an investigation and enforcement of the Act. Moreover, "the Legislature chose to label the penalty a *civil* penalty." *Kirby*, 2003-NMCA-074, ¶ 38. Although the label is not dispositive on the double jeopardy analysis, *see id.* ¶ 29, the use of the term "civil" supports our interpretation of the Legislature's purpose in enacting the penalty.

**{46}** In summary, the *Mendoza-Martinez* factors indicate that the civil penalty is not sufficiently punitive in its effect or purpose so as to outweigh its remedial effect. This, in conjunction with the Legislature's purpose in enacting the Act, leads us to conclude that the civil penalty is not "punishment" for double jeopardy purposes under the third *Schwartz* factor. It was therefore error for the district court to dismiss Counts 1 and 2 against Block Jr. on double jeopardy grounds. As previously stated, we also reverse the dismissal of Counts 3 and 4 against Block Jr. on double jeopardy grounds because the conduct underlying those criminal charges and the secretary of state's previous action was not unitary.

**CONCLUSION**

**{47}** We hold that the Act does not limit the attorney general's authority to initiate criminal proceedings for violations of the Act. The attorney general is not required to first receive a referral from the secretary of state before he or she can initiate criminal proceedings. We also conclude that the civil penalty authorized under Section 1-19A-17(A) of the Act is not considered punishment for double jeopardy purposes and, thus, it does not preclude subsequent criminal prosecution for the same conduct against which the civil penalty was assessed. Accordingly, we reverse the district court's order of dismissal and remand with instructions to reinstate all charges brought under the Act against Defendants.

**{48}    IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

16

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**


_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Block_, No. 30,285**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CS | Conspiracy |
| CL-EZ | Embezzlement |
| CL-TM | Tampering |
| | |
| **GV** | **GOVERNMENT** |
| GV-AG | Attorney General |
| GV-EL | Elections |
| GV-PO | Public Office |
| GV-SS | Secretary of State |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-RC | Rules of Construction |