This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37387**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellant,

v.

**ALEXANDER ALIREZ,**

> Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Albert J. Mitchell, Jr., District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}**     The State appeals from the district court's decision to dismiss Defendant Alexander Alirez's charge of extreme cruelty to animals in violation of NMSA 1978, Section 30-18-1(E)-(F) (2007), and four charges of cruelty to animals in violation of Section 30-18-1(B), (D), on double jeopardy grounds. The State argues that double jeopardy does not preclude criminal prosecution for cruelty to animals where an animal owner's animals are seized and subsequently relinquished to the State pursuant to

NMSA 1978, Section 30-18-1.2 (2009), because of a defendant's failure to post security. We reverse the district court and remand for additional proceedings.

**BACKGROUND**

**{2}** On September 2, 2015, pursuant to a search warrant, five dogs were seized from 302-A Union Street in Las Vegas, New Mexico—an address associated with Defendant—based on a finding of probable cause that the dogs were suffering from extreme malnourishment caused by "cruel treatment." NMSA 1978, § 30-18-1.1(A), (B) (1999). One of the dogs, "Hubble," was admitted to the Petroglyph Animal Hospital on September 3, 2015, and was ultimately euthanized. The other four dogs were housed with the Animal Welfare Coalition Pet Center (AWC). On November 11, 2015, an additional dog, "Vanderbilt," was seized at 415 Blanchard Street, Las Vegas, New Mexico—another address associated with Defendant—and housed with AWC.

**{3}** Around the time that Hubble was euthanized, the State filed a criminal complaint that included one count of extreme cruelty to animals in violation of Section 30-18-1(E) and four counts of cruelty to animals in violation of Section 30-18-1(B). The State did not file any criminal charges related to Vanderbilt at that time or thereafter. The charges were dismissed without prejudice due to a mistrial on October 3, 2016, and refiled by the State on October 31.

**{4}** On March 14, 2016, AWC filed a civil action in magistrate court for indemnification of the costs associated with caring for and housing five dogs (Hubble was not included) or for surrender of the dogs. The total cost of feeding, caring for, and housing the animals from the date each of the dogs arrived at AWC until the hearing on March 28, 2016, was $14,660. Defendant was not present at the hearing before the magistrate court, and the court issued a default judgment on April 1, 2016. The magistrate court ordered Defendant to pay a $10,000 security for the costs associated with feeding, caring for, and housing the dogs.[1] Defendant did not pay the security within fifteen days, as required by the statute, and the animals were deemed relinquished to the State. *See* § 30-18-1.2(E).

**{5}** Based on the security, involuntary relinquishment of his dogs, and the default judgment from the magistrate court, Defendant filed a motion to dismiss the criminal case on double jeopardy grounds. The district court granted Defendant's motion. The State filed a timely motion to reconsider, which included exhibits indicating that the amount of the security was associated with the cost of housing the animals. The district court held a hearing and ultimately denied the motion to reconsider. The State timely appealed.

**DISCUSSION**

---

1The State characterizes the $10,000 award by the magistrate court as limited by jurisdictional requirements in NMSA 1978, Section 35-3-3(A) (2001) ("Magistrate[ courts] have jurisdiction in civil actions in which the debt or sum claimed does not exceed ten thousand dollars ($10,000), exclusive of interest and costs.").

**{6}** The issue on appeal is whether the requirement in Section 30-18-1.2(E) that a person charged with cruelty to animals either post a security to indemnify the animal shelter for the care of the animals, or lose the animals by involuntary relinquishment, is a punitive forfeiture under double jeopardy principles.

**{7}** We review double jeopardy claims de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State ex rel. Schwartz v. Kennedy*, 1995-NMSC-069, ¶ 14, 120 N.M. 619, 904 P.2d 1044 (internal quotation marks and citation omitted). In this case, we are concerned with multiple punishments for the same offense. "The Double Jeopardy Clause not only protects against the imposition of two punishments for the same offense, but also protects criminal defendants against being twice placed in jeopardy for such punishment." *Id.*

**{8}** In New Mexico, we use a three-factor test, articulated in *Schwartz*, to determine whether a forfeiture places a defendant in double jeopardy: "(1) whether the [s]tate subjected the defendant to separate proceedings; (2) whether the conduct precipitating the separate proceedings consisted of one offense or two offenses; and (3) whether the penalties in each of the proceedings may be considered 'punishment' for the purposes of the Double Jeopardy Clause." *Id.* ¶ 15.

**{9}** The parties do not contest the first two factors, focusing instead on the third factor in their briefing. It is clear that Defendant was subjected to two separate proceedings. *See id.* ¶ 16 ("The [United States] Supreme Court has made clear that parallel actions, instituted at about the same time and involving the same criminal conduct, constitute *separate* proceedings for double jeopardy purposes." (internal quotation marks and citation omitted)). We assume without deciding that "the same conduct precipitated the separate proceedings and forms the basis" for both the relinquishment of the dogs and the criminal charges against Defendant. *State v. Kirby*, 2003-NMCA-074, ¶ 21, 133 N.M. 782, 70 P.3d 772. Thus, we move on to the third factor: whether the relinquishment of Defendant's dogs was remedial or punitive in nature. *See Schwartz*, 1995-NMSC-069, ¶ 22 ("The Double Jeopardy Clause bars multiple *punishments* for the same offense in separate proceedings.").

**The Security and Involuntary Relinquishment of Defendant's Dogs Imposed Under Section 30-18-1.2(E) Do Not Constitute Punishment Under the Double Jeopardy Clause**

**{10}** The Legislature "may impose both a criminal and a civil sanction in respect to the same act or omission without violating the Double Jeopardy Clause." *Schwartz*, 1995-NMSC-069, ¶ 23 (internal quotation marks and citation omitted). If the sanction "may be fairly characterized only as a deterrent or as retribution, then the revocation is punishment; if the penalty may fairly be characterized as remedial, then it is not punishment for the purposes of double jeopardy analysis." *Id.* ¶ 28.

To determine whether a sanction is remedial or punitive, a reviewing court begins by evaluating the government's purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant. Then the court must determine whether the sanction . . . was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect. Although a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose.

*City of Albuquerque v. One 1984 (1) White Chevy Ut.*, 2002-NMSC-014, ¶ 11, 132 N.M. 187, 46 P.3d 94 (internal quotation marks and citations omitted).

**{11}** The purpose of the security and relinquishment provisions is plainly remedial.[2] Before a defendant may be ordered to post security for an animal under the cruelty to animals statutes, a court must find that there is "probable cause that the animal is being cruelly treated" and issue a warrant for the seizure of the animal. Section 30-18-1.1(B). Between the time of seizure and the resolution of criminal charges brought against the animal's owner, a seized animal remains under the care of an animal care organization in a kind of "protective custody" in which the animal receives necessary "rehabilitation and maintenance" while protected from any potential further abuse. Fiscal Impact Report, S.B. 127, *Custody & Care of Mistreated Animals*, 49th Leg., 1st. Sess. (N.M. 2009), at 3, *available at* https://nmlegis.gov/Sessions/09%20Regular/firs/SB0127.pdf; *see* § 30-18-1.2(C) (providing that an animal care organization with custody of a cruelly treated animal may petition the court for indemnification of "costs incurred to care and provide for the seized animal pending the disposition of any criminal charges"). The security provisions are intended to ensure that the animal care organization has recourse to avoid shouldering the full financial burden of providing housing, sustenance, and medical care—which, as this case demonstrates, "can reach into the tens of thousands of dollars," Fiscal Impact Report, *supra*, at 3—to the animal during this period, subject to the qualification that a court must take the defendant's ability to pay these costs into consideration in setting the security amount. *Cf. State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2015-NMSC-025, ¶ 46, 355 P.3d 1 ("[A] monetary sanction has a deterrent or retributive purpose if it is not designed to compensate the government for its losses." (internal quotation marks and citation omitted)). And, because a defendant becomes liable for the full cost of this care upon conviction for cruelty to animals, NMSA 1978, § 30-18-1.3(A) (2009), the security provides the animal

---

2The district court, after noting that Defendant had been found to be indigent, believed that there was "no reasonable rationale for [requiring] a $10,000 [security] to be posted for the care of an animal" and therefore concluded that the security was punitive. Although the amount of security is indeed substantial, *see generally* § 30-18-1.2(D) (providing that a district court must consider "all of the circumstances of the case[,] including the owner's ability to pay," in determining the amount of security), we do not agree with the district court's conclusion that the amount imposed is determinative of whether the relinquishment of Defendant's dogs was a remedial or punitive sanction. *Cf. White Chevy*, 2002-NMSC-014, ¶ 11 ("Although a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose."). Because this appeal involves only the double jeopardy implications of the statutory scheme chosen by our Legislature to govern the seizure, care, and disposition of cruelly treated animals, our opinion does not address the propriety of the proceedings in Defendant's civil case.

care organization some assurance that a portion of this cost will be recoverable in that event.

**{12}**    The relinquishment provision under which Defendant was deprived of his ownership interest in the dogs serves a similarly remedial purpose. Under Section 30-18-1.2(E), "[i]f the owner of [a seized] animal does not post security within fifteen days after the issuance of the [security] order . . .[,] the animal may be deemed abandoned and relinquished to the animal control agency, animal shelter or animal welfare organization for adoption or humane destruction[.]" When an animal owner declines or is unable to post the security ordered by the district court, the full cost of caring for seized animals is borne by the animal care organization during the pendency of criminal proceedings. Beyond this direct cost, caring for seized animals burdens animal care organizations by decreasing their ability to provide services to other animals in need of care. *See* Fiscal Impact Report, *supra*, at 3 ("Seized animals that are in protective custody are occupying precious shelter kennel space for months and sometimes years at a time. These animals reduce the space available to house homeless animals in local animal shelters[.]"). And the experience of confinement in an animal care facility also exacts a significant toll on the seized animals themselves. *See id.* ("Long-term holding times for animals in shelters can result in mental and physical suffering for the animals, who have limited access to exercise and interaction."). The relinquishment provision is aimed at remedying these effects: when invoked, it frees animal care facilities to begin the search for appropriate placement for cruelly treated animals or, if necessary, to euthanize an animal that is beyond rehabilitation.

**{13}**    Although their purposes are remedial, the security and relinquishment provisions would nonetheless impose punishment if they were "sufficiently punitive in [their] effect that, on balance, the punitive effects outweigh the remedial effect." *White Chevy*, 2002-NMSC-014, ¶ 11. To determine whether a sanction is functionally punitive we examine:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Kirby*, 2003-NMCA-074, ¶ 28 (alteration, internal quotation marks, and citation omitted). "While these factors may provide useful guideposts, they are neither exhaustive nor dispositive[.]" *Austin Capital Mgmt., Ltd.*, 2015-NMSC-025, ¶ 34 (internal quotation marks and citations omitted). Under this framework, we conclude that the sanction is not functionally punitive.

**{14}**    First, neither the security nor the involuntary relinquishment of Defendant's dogs imposed an "affirmative disability or restraint." *Kirby*, 2003-NMCA-074, ¶ 30 (internal

quotation marks and citation omitted). The involuntary relinquishment does not "carry the stigma of a criminal conviction," *id.*, and imposes no restrictions on Defendant's future conduct whatsoever, except to the extent his conduct will be affected by the extinguishment of his ownership interest in the relinquished dogs. *Cf. State v. Block*, 2011-NMCA-101, ¶ 38, 150 N.M. 598, 263 P.3d 940 (holding that a civil penalty of $10,000 per violation under the New Mexico Voter Action Act, NMSA 1978, §§ 1-19A-1 to -17 (2003, as amended through 2019), does not constitute an affirmative disability or restraint because the penalty does not bar a fined "candidate's ability to run for public office, . . . bar a fined candidate from continuing his or her current campaign[,] or from running for public office in the future"). Even granting that the relinquishment of Defendant's dogs operates as a forfeiture, recognized as a severe penalty under New Mexico law, *see State v. Nunez*, 2000-NMSC-013, ¶ 75, 129 N.M. 63, 2 P.3d 264, the present loss of Defendant's animals does not "approach[] the infamous punishment of imprisonment[,]" which would definitively impose an affirmative disability or restraint. *Hudson v. United States*, 522 U.S. 93, 104 (1997) (internal quotation marks and citation omitted).

**{15}**  Second, we assume without deciding that the relinquishment of an animal resulting from the failure to post a monetary security has traditionally been considered a form of punishment in New Mexico. *Cf. Nunez*, 2000-NMSC-013, ¶ 74 (observing that the "quasi criminal" characterization of civil forfeitures "has become a fixture of [New Mexico's] jurisprudence"); *but cf. Kirby*, 2003-NMCA-074, ¶ 31 ("[M]onetary assessments are traditionally a form of civil remedy." (internal quotation marks and citation omitted)).

**{16}**  With regard to the third factor, we assume without deciding that a finding of scienter is necessary for the court to require the posting of security, and thus is a prerequisite for the deemed relinquishment of an animal. *See* § 30-18-1.1(B) (providing that a court may issue a warrant for seizure of an animal only upon a finding of "probable cause that the animal is being cruelly treated").

**{17}**  Fourth, although the security and relinquishment might have deterrent and punitive effects, those effects are incidental to and outweighed by the remedial purposes served by the pertinent provisions. *Cf. Kirby*, 2003-NMCA-074, ¶ 34 (finding that "while the civil penalty [in the Securities Act] may by its nature have effects of deterrence and punishment, those effects are incidental to and do not override the Act's and the civil penalty's primarily remedial purpose"). The provisions enable animal care organizations to obtain financial assistance for the care of cruelly treated animals while the animals are in their protective custody; enable courts to permit these organizations to immediately place an animal in an adequate living situation when the animal's owner elects not to contribute to the animal's upkeep; and ensure that the government does not shoulder the costs of care if the defendant's conduct is ultimately found to be criminal.

**{18}**  Fifth, in this case, the same conduct formed the basis for the relinquishment and Defendant's criminal charges. *See id.* ¶ 35. Although the impetus for the deemed

relinquishment of Defendant's dogs was Defendant's failure to post security, the conduct underlying the order requiring security and Defendant's criminal charges is the same: Defendant's alleged criminally cruel treatment of the dogs.

**{19}** Sixth, "there exists an alternative, remedial[] purpose to which the [security and relinquishment] may rationally be connected." *Id.* ¶ 36. The purpose of the security, as we have explained, is to indemnify the animal shelter for housing Defendant's animals. The purpose of the deemed relinquishment is to enable the relevant animal care organization to avoid bearing the full cost of care during the pendency of criminal proceedings by immediately seeking placement for an animal when its owner declines or is unable to contribute to its care—which, at that point, is care for the owner's own property.

**{20}** Finally, we do not find that the imposition of the security and involuntary relinquishment are excessive in relation to the remedial purposes of the animal cruelty statutes. The amount of security contemplated by the statute is not "out of proportion or excessive," *id.* ¶ 37; it is to be based on "the costs incurred to care and provide for [a] seized animal," § 30-18-1.2(D), a requirement followed here since the security in Defendant's civil case was based on the cost of housing and caring for the dogs during the time period in question. And, even granting that a deemed relinquishment constitutes a forfeiture—"the most extreme [property-based] sanction the state can bring against [a] property owner[,]" *Nunez*, 2000-NMSC-013, ¶ 75—this punitive effect is not excessive in relation to the remedial purpose for which the relinquishment provision was enacted: encouraging animal owners to contribute to their own property's care while criminal charges are pending and alleviating the burdens, financial and otherwise, incurred by animal care organizations in caring for seized animals.

**{21}** Weighing all of the factors in accordance with governing precedent, we conclude that the remedial aspects of the security and involuntary relinquishment significantly outweigh the punitive effects. *Cf. White Chevy*, 2002-NMSC-014, ¶ 11 (requiring courts to "determine whether the sanction established by the legislation was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect" and stating that "[a]lthough a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose").

## The Legislature Did Not Intend to Only Allow Criminal Prosecution of People Who Voluntarily Relinquish Their Animals

**{22}** Defendant also argues that Section 30-18-1.2 indicates that the Legislature intended to allow for criminal prosecutions *only* of people who voluntarily relinquish their animals, *see* § 30-18-1.2(F), and intended to prohibit prosecution of people who involuntarily relinquish their animals, *see* § 30-18-1.2(E). We disagree with this interpretation of Section 30-18-1.2(E) because it would lead to absurd and unjust results. *See State v. Salazar*, 2018-NMCA-030, ¶ 32, 458 P.3d 485 (stating that we will "giv[e] effect to the plain meaning of the words of the statute, unless this leads to an

absurd or unreasonable result" (alteration, internal quotation marks, and citation omitted)). Defendant's proposed holding would allow people to escape prosecution for cruelty to animals, including extreme cruelty to animals, by not posting the security, thereby triggering involuntary relinquishment. This would undermine the purpose of the statute, which is to protect animals from abuse and impose criminal liability on those who abuse them. *See State v. Ordunez*, 2010-NMCA-095, ¶ 5, 148 N.M. 620, 241 P.3d 621 ("We read statutes harmoniously with each other whenever possible, and we interpret statutes to facilitate and promote the Legislature's accomplishment of its purpose." (alteration, internal quotation marks, and citations omitted)), *aff'd in part, disapproved in part*, 2012-NMSC-024, 283 P.3d 282. We will not construe the statute in a manner that delegates to the very person who stands accused of a crime the authority to determine whether he or she may be prosecuted.

**{23}** Defendant's interpretation is also untenable because Section 30-18-1.3(A) contemplates indemnification of the animal care facility upon a conviction for cruelty to animals, while Section 30-18-1.3(B) states that, in the absence of a conviction, the animals—"if not previously relinquished"—and security will be returned to the owner. Section 30-18-1.3(A) states that "[u]nexpended security funds shall be returned to the defendant" upon conviction, which indicates that the Legislature anticipated that a person whose animals were involuntarily relinquished could be convicted of animal cruelty.

**{24}** For these reasons, we conclude that double jeopardy does not preclude criminal prosecution for Defendant's extreme and misdemeanor cruelty to animals charges.

**CONCLUSION**

**{25}** We reverse the order of dismissal and remand for further proceedings consistent with this opinion.

**{26} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**